This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Daniel L. Nixon, Sr., appeals his conviction in the Lorain County Court of Common Pleas. We affirm in part and reverse in part.
 I.
In February 1999, Stephanie Nixon and her then ex-husband, Daniel Nixon, Sr., moved into a residence located at 254 5th Street in Elyria, Ohio. A few months earlier, they had resumed a relationship.
Ms. Nixon worked as an exotic dancer at Bugsy's Speakeasy ("Bugsy's"). According to Ms. Nixon, prior to the evening in question, Mr. Nixon began pressuring her to solicit men from Bugsy's for private dances and sexual favors for money, which were to be performed at the Nixon residence. Late in the evening of February 19, 1999, Ms. Nixon returned to the 5th Street residence after dancing at Bugsy's, and then, she and Mr. Nixon went to several bars looking for men who would be interested in a private dance. Eventually, they went to Mom's Open Kitchen, where Ms. Nixon approached Ted Squires, who was a patron of Bugsy's, and invited him back to the residence. Both Ms. Nixon and Mr. Squires testified that although they had known each other for several years, they had never had sexual relations with one another prior to that night.
Between approximately 2:00 to 3:00 a.m. on February 20, 1999, they arrived at the 5th Street residence and began drinking, listening to music, and ingesting cocaine, which was provided by Mr. Squires. They continued until approximately 7:00 a.m. when Mr. Nixon and Mr. Squires decided to purchase more beer, as their supply of both cocaine and beer had been depleted. At that time, Mr. Squires withdrew approximately fifty dollars from the ATM.
When they returned to the 5th Street residence, Ms. Nixon put on a dancing costume and began dancing on a makeshift stage in their dining room at Mr. Nixon's request. According to Mr. Squires, he kept telling Mr. Nixon that he had no money. After a few dances, Mr. Nixon began kissing Ms. Nixon. All three of them moved into the living room, where Ms. Nixon allowed Mr. Squires to perform cunnilingus on her. She testified that she had misgivings about the entire situation and started to cry, but that Mr. Nixon told her to perform oral sex on Mr. Squires. She performed oral sex on Mr. Squires for a few seconds before Mr. Squires asked her to stop. Mr. Nixon became instantly enraged and hit Mr. Squires on the back of the head with sufficient force to knock him nearly unconscious. Mr. Nixon continued to beat Mr. Squires while he was on the floor. Mr. Nixon ranted about Mr. Squires not finding Ms. Nixon attractive and that he had to pay her for the oral sex. After repeated threats of further violence, Mr. Squires gave Mr. Nixon all of his money.
Mr. Nixon grabbed a baseball bat and repeatedly swung it at Mr. Squires and Ms. Nixon, sometimes coming within inches of their heads. At some point, Mr. Nixon struck Ms. Nixon on the toe or foot with the bat. He also repeatedly threatened to kill them. Although Mr. Squires attempted to leave at one point, Mr. Nixon would not let him and blocked the front door by standing in front of it with the bat in hand. Both victims testified that Mr. Nixon was restraining them against their will.
Mr. Squires testified that Mr. Nixon ordered them into the bedroom, where he made Mr. Squires disrobe and lie on the bed. Mr. Nixon threatened to kill Ms. Nixon if Mr. Squires were to attempt to leave. Mr. Squires stated that Mr. Nixon had the baseball bat with him the entire time. On the other hand, Ms. Nixon testified that Mr. Nixon permitted her to go to the bedroom because she was tired, but a short time later, Mr. Nixon and Mr. Squires appeared. Mr. Nixon then informed her that they wanted to have "fun[.]" She refused.
Although Ms. Nixon's and Mr. Squires' testimonies differed as to how they arrived in the bedroom, their testimonies were consistent regarding the events which subsequently occurred there. Mr. Nixon hit Ms. Nixon and choked her, at first with his hands and then with the baseball bat. Ms. Nixon testified that he choked her until she lost consciousness and that when she regained consciousness, Mr. Nixon told her that she was going to be his "whore[.]" Both Mr. Squires and Ms. Nixon testified that Mr. Nixon forced her to perform oral sex on Mr. Squires, by slamming her head between Mr. Squire's legs, while Mr. Squire's penis was in her mouth. Mr. Nixon also forced her to perform oral sex on him. In addition, Mr. Nixon forcibly penetrated her vaginally and anally with his penis and anally penetrated her with a vibrator. All of these acts were done without either victim's consent.
Mr. Nixon subsequently locked them in the bedroom, at which time, they unsuccessfully attempted to break the window. Mr. Nixon then ordered them into the living room, continued to threaten them, and demanded that Ms. Nixon take a shower and get cleaned-up because he wanted to have more "fun[.]" As she was showering, Mr. Nixon came in, slapped her, and told her to start applying her make-up. At one point, Ms. Nixon noticed that Mr. Nixon's attention was diverted, so she ran naked out of the front door and proceeded to a neighbor's house. Mr. Nixon chased after her. Left unguarded, Mr. Squires ran out and got into his automobile. The neighbor, Dave Robbins, gave Ms. Nixon some clothing and called the police.
As Mr. Squires was pulling out of the driveway, Mr. Nixon jumped into the passenger's seat. Mr. Squires drove to an intersection, where he saw a local law enforcement officer on a routine traffic stop. Mr. Squires exited the vehicle, taking his keys with him. When Mr. Nixon exited the vehicle, Mr. Squires got back in and drove to the police officer's location.
Officers of the City of Elyria Police Department arrested Mr. Nixon that day and conducted a search of the 5th Street residence, pursuant to written consent given by Ms. Nixon. Items, such as the baseball bat and the vibrator, were seized pursuant to the search and admitted into evidence at trial. Detective Al Leiby of the City of Elyria Police Department interviewed Mr. Nixon on February 20, 1999. Mr. Nixon told Detective Leiby a vastly different story, stating that he was absent from the residence most of the night and that when he returned the next day, there was a wild party progressing and he was attacked by the party-goers. Detective Leiby testified that after the tape recorder was turned off, Mr. Nixon admitted to having been present at the residence the entire night, but declined to make any further statements.
On May 11, 1999, the Lorain County Grand Jury indicted Mr. Nixon on two counts of rape, in violation of R.C. 2907.02(A)(2), two counts of kidnapping, in violation of R.C. 2905.01(A)(3), two counts of kidnapping, in violation of R.C. 2905.01(A)(4), felonious assault, in violation of R.C. 2903.11(A)(2), domestic violence, in violation of R.C.2919.25(A), robbery, in violation of R.C. 2911.02(A)(2), and aggravated menacing, in violation of R.C. 2903.21(A). The charges of rape, kidnapping, and felonious assault all contained sexual motivation specifications; however, the sexual motivation specifications for the two counts of rape were dismissed prior to trial. A jury trial was held, commencing on May 23, 2000. In a verdict journalized on May 31, 2000, the jury found Mr. Nixon guilty of all of the counts contained in the indictment. At the sentencing hearing, the state elected to pursue two of the four kidnapping convictions, and Mr. Nixon was sentenced accordingly. This appeal followed.
 II.
Mr. Nixon asserts eight assignments of error. We will address each in due course.
 A. First Assignment of Error THE TRIAL COURT ERRED WHEN IT PERMITTED THE STATE TO INTRODUCE EVIDENCE OF OTHER "BAD" ACTS BY DEFENDANT-APPELLANT IN VIOLATION OF OHIO RULE OF EVIDENCE 404(B) AND OHIO REVISED CODE § 2945.59, THEREBY DENYING DEFENDANT-APPELLANT HIS RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10
OF THE OHIO CONSTITUTION.
In his first assignment of error, Mr. Nixon asserts that the trial court erred in permitting the state to introduce evidence of an incident that occurred approximately one week prior to the crime charged in the instant action, during which Mr. Nixon solicited a patron of Bugsy's for a private dance with Ms. Nixon and assaulted the patron when Ms. Nixon refused to continue dancing. He argues that this violated Evid.R. 404(B) and R.C. 2945.59, which prohibit the introduction of evidence of other acts to prove the character of the defendant in order to show that defendant acted in conformity therewith. We disagree.
"`The trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, [an appellate] court should be slow to interfere.'" (First alteration original.) State v.Maurer (1984), 15 Ohio St.3d 239, 265, quoting State v. Hymore (1967),9 Ohio St.2d 122, 128. "`[T]he term "abuse of discretion" * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable.'"State v. Lowe (1994), 69 Ohio St.3d 527, 532, quoting State v. Adams
(1980), 62 Ohio St.2d 151, 157. Moreover, a new trial should not be granted unless the accused was prejudiced or may have been prejudiced by the evidence improperly admitted. R.C. 2945.83(C).
Generally, evidence of prior criminal acts, wholly independent of the crime for which defendant is on trial, is inadmissible. State v.Thompson (1981), 66 Ohio St.2d 496, 497. R.C. 2945.59 codifies the exceptions to this rule, providing:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
Similarly, Evid.R. 404(B) states that
 [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Evid.R. 404(B) is in accord with R.C. 2945.59. State v. Broom (1988),40 Ohio St.3d 277, 281. Evidence of other acts by a defendant are only admissible when they tend to show one of the matters enumerated in the statute and only when the evidence offered is relevant to prove that the defendant is guilty of the offense in question. State v. Burson (1974),38 Ohio St.2d 157, 158. Moreover, it is not required that the "other acts" are "like" or "similar" to the crime charged, but only that they "tend to show" any of the enumerated things. State v. Hill (1992),64 Ohio St.3d 313, 322-23. "Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict."Broom, 40 Ohio St.3d at paragraph one of the syllabus.
In the case at bar, Ms. Nixon testified that approximately one week prior to the events that gave rise to the charges in the present case, Mr. Nixon solicited a patron of Bugsy's for a private dance with Ms. Nixon. He informed the patron that he had a dancer that was willing to do whatever he told her to do. Mr. Nixon brought the individual to his residence where Ms. Nixon was to dance on a makeshift stage in their dining room. When they arrived, Ms. Nixon was asked to put on an outfit and to model or dance for them. Ms. Nixon began to comply, but then, became upset, slapped Mr. Nixon, and refused to be his "whore[.]" Mr. Nixon stood up and "sucker-punched" the other man, who then put Mr. Nixon in a choke hold and would not release Mr. Nixon until he promised not to hurt Ms. Nixon when the man was gone. Ms. Nixon testified that she begged the man not to leave her alone because she was afraid of what Mr. Nixon would do, but the man left anyway.
At trial, the state argued that this testimony was admissible pursuant to the common plan, scheme, or system exception. The trial court found the contested evidence to be admissible upon Mr. Nixon's objection at trial.
 "Scheme, plan or system" evidence is relevant in two general factual situations. First, those situations in which the "other acts" form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment. In such cases, it would be virtually impossible to prove that the accused committed the crime charged without also introducing evidence of the other acts. To be admissible pursuant to this sub-category of "scheme, plan or system" evidence, the "other acts" testimony must concern events which are inextricably related to the alleged criminal act.
State v. Curry (1975), 43 Ohio St.2d 66, 73. The prosecution need not show that it would be virtually impossible to prove the crime charged without the contested evidence but only that "the contested evidence [is] inextricably intertwined [with what occurred] and, thus, necessary to give [a] complete picture of what occurred." State v. Wilkinson (1980),64 Ohio St.2d 308, 318; see, also, Thompson, 66 Ohio St.2d at 498
(stating that "where the challenged evidence plays an integral part in explaining the sequence of events and is necessary to give a complete picture of the alleged crime," it is admissible).
We find that the evidence of Mr. Nixon's prior act provides inextricably related background information necessary to give a complete picture of the crimes charged and tends to show Mr. Nixon's motive for reacting violently against his victims. In the prior incident, when Ms. Nixon refused to comply with Mr. Nixon's requests to perform sexual favors, Mr. Nixon became violent and struck the patron, who curtailed Mr. Nixon's violent outburst by placing him in a chokehold. This incident tends to show Mr. Nixon's motive to punish Ms. Nixon and react even more violently when Ms. Nixon again expressed an unwillingness to prostitute herself at his insistence during the second incident. Moreover, the first incident provided necessary background for the heightened degree of violence and perversion in the second incident. We, therefore, cannot find that the trial court abused its discretion in admitting the aforementioned testimony. Furthermore, we conclude that, as there was overwhelming evidence of Mr. Nixon's guilt, any error in the admission of such testimony was harmless beyond a reasonable doubt. Accordingly, Mr. Nixon's first assignment of error is overruled.
 B. Second Assignment of Error THE TRIAL COURT ERRED BY FAILING TO GRANT DEFENDANT-APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29 AS TO THE SECOND COUNT OF THE INDICTMENT, RAPE IN VIOLATION OF REVISED CODE § 2907.02.
 Ninth Assignment of Error THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his second assignment of error, Mr. Nixon contends that the trial court erred in denying his motion for acquittal of the rape of Mr. Squires because he did not engage in any sexual conduct, as defined in R.C. 2907.01(A), with Mr. Squires. Further, in his ninth assignment of error, he asserts that his conviction on that charge is against the manifest weight of the evidence.[1] We will discuss each argument in turn.
Crim.R. 29(A) Motion for Acquittal
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
Mr. Nixon was indicted, in terms of the principal offense, for the rape of Mr. Squires, pursuant to R.C. 2907.02(A)(2). R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The term "[s]exual conduct" includes "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex[.]" R.C. 2907.01(A). The indictment tracked the general language of R.C. 2907.02(A)(2), stating:
 DANIEL L. NIXON, SR. * * * on or about February 20, 1999, did engage in sexual conduct with Ted Squires, who is not the spouse of DANIEL L. NIXON, SR.,[2] the said DANIEL L. NIXON, SR. having purposely compelled the said Ted Squires to submit by force or threat of force[.]
(Emphasis added.) Although the indictment charged Mr. Nixon in terms of the principal offense, the state was able to pursue a charge of complicity to commit rape, as "[a] charge of complicity may be stated in terms of this section, or in terms of the principal offense." R.C.2923.03(F). Importantly, R.C. 2923.03(F) placed Mr. Nixon on notice that the jury may have been given a complicity instruction even though he was charged as the principal offender.[3] See State v. Keenan (1998),81 Ohio St.3d 133, 151.
The provision of the complicity statute applicable to the instant matter is R.C. 2923.03(A)(4), which states that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [c]ause an innocent or irresponsible person to commit the offense." We note that this court has previously applied this section to a similar situation in which the defendant forced the adult victim to engage in sexual conduct with an innocent adult party. See State v. Finsley (Feb. 14, 1979), Summit App. No. 9029, unreported, at 11-12; see, generally, Inre M.D. (1988), 38 Ohio St.3d 149, 151-52.
With the applicable law in mind, we now turn to the facts of the casesub judice. During the state's case-in-chief, Ms. Nixon and Mr. Squires testified that Mr. Nixon physically compelled Ms. Nixon to perform fellatio on Mr. Squires. Both testified that this act was done against their will. As previously discussed, at the close of the state's case-in-chief, the state still had the option of pursuing a charge of complicity to commit rape in addition to or rather than a charge in terms of the principal offense. See Keenan, 81 Ohio St.3d at 151. Consequently, we conclude that, in construing the evidence in a light most favorable to the prosecution, the record demonstrates that reasonable minds could reach different conclusions as to whether each material element of complicity to rape Mr. Squires had been proven beyond a reasonable doubt. As such, the trial court properly overruled Mr. Nixon's Crim.R. 29(A) motion for acquittal. Mr. Nixon's second assignment of error is overruled.
 Manifest Weight
Although we have determined that the trial court properly overruled Mr. Nixon's Crim.R. 29(A) motion for acquittal, we find, for the reasons that follow, that Mr. Nixon's conviction as the principal offender for the rape of Mr. Squires is not supported by sufficient evidence as a matter of law.
"A reversal based on the weight of the evidence can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict." Tibbs v. Florida (1982),457 U.S. 31, 42-43, 72 L.Ed.2d 652, 662. When reversing based on manifest weight, an appellate court sits as a "thirteenth juror" and disagrees with the jury's resolution of conflicting evidence. Id. at 42, 72 L.Ed.2d at 661; State v. Otten (1986), 33 Ohio App.3d 339, 340. On the other hand, a reversal based on legally insufficient evidence signifies that, in viewing the evidence in a light most favorable to the state, no rational jury could have voted to convict the defendant. Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Significantly, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs, 457 U.S. at 45,72 L.Ed.2d at 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 61 L.Ed.2d 560. It follows that a determination that the evidence is legally sufficient to support a conviction serves as a prerequisite to reversal based upon the weight of the evidence. See Tibbs, 457 U.S. at 42-43,72 L.Ed.2d at 662. Consequently, before reaching whether Mr. Nixon's conviction for the principal offense of rape of Mr. Squires is against the manifest weight of the evidence, this court must first determine whether that conviction is supported by sufficient evidence as a matter of law.
The Ohio Supreme Court has set forth the applicable standard for determining whether a conviction is supported by legally sufficient evidence: "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks (1991), 61 Ohio St.3d at paragraph two of the syllabus. If the conviction is not sustained by sufficient evidence as a matter of law, retrial is barred under principles of double jeopardy.State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
As previously discussed, there was sufficient evidence to convict Mr. Nixon of complicity to commit rape of Mr. Squires for forcing his victims to engage in fellatio; however, Mr. Nixon was not convicted of complicity to commit rape, but rather, was convicted on the principal offense of rape. At trial, the state did not request an instruction on complicity and the trial court did not give such an instruction. We note that it is the trial court's obligation to "`give all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the factfinder.'" State v. Cornwell (1999), 86 Ohio St.3d 560, 567, quoting State v. Joy (1995), 74 Ohio St.3d 178, 181. Here, the trial court omitted an instruction on complicity and, instead, instructed the jury on the principal offense of rape, stating:
 In Count Two of the indictment, the defendant is charged with rape.
 Before you can find the defendant guilty of the offense charged in Count Two, you must find, by proof beyond a reasonable doubt, that the State of Ohio has proved [sic] all of the essential elements of the offense charged in Count Two, which are: (1) On or about February 20, 1999 (2) the defendant, Daniel L. Nixon, Sr. (3) did engage in sexual conduct with Ted Squires, who was not his spouse (4) by purposely compelling Ted Squires to submit by force or threat of force; and (5) that it happened in Lorain County, Ohio.
 Since the jury was not instructed on complicity and found Mr. Nixon guilty of the principal offense of rape, this court must, therefore, determine whether there was sufficient evidence to support Mr. Nixon's conviction as the principal offender for the rape of Mr. Squires.
After an extensive review of the record, we must conclude that there is insufficient evidence as a matter of law to support Mr. Nixon's conviction for the principal offense of rape of Mr. Squires. Specifically, there is no evidence in the record that Mr. Nixon ever personally engaged in sexual conduct, as defined in R.C. 2907.01(A), with Mr. Squires; rather, Mr. Nixon physically forced Ms. Nixon to perform fellatio on an unwilling Mr. Squires. Again, we note that "a conviction based on legally insufficient evidence constitutes a denial of due process." Thompkins, 78 Ohio St.3d at 386; see Tibbs, 457 U.S. at 45,72 L.Ed.2d at 663. Accordingly, despite the heinous nature of the act committed against the victims, we are compelled to conclude that Mr. Nixon's conviction for the principal offense of rape of Mr. Squires, pursuant to R.C. 2907.02(A)(2), must be reversed.[4] Mr. Nixon's ninth assignment of error is sustained in part, regarding his conviction for the rape of Mr. Squires, as this conviction was supported by legally insufficient evidence. As such, retrial of Mr. Nixon on that count is barred. See Thompkins, 78 Ohio St.3d at 387.
 C. Third Assignment of Error THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT DEFENDANT-APPELLANT'S PRO S.E. MOTION TO DISCHARGE DEFENDANT PURSUANT TO REVISED CODE §§ 2945.71 AND 2945.73, THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
In his third assignment of error, Mr. Nixon avers that he was not given a speedy trial, as guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. We disagree.
The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. The Ohio Legislature enacted R.C. 2945.71 et seq. to enforce a defendant's constitutional right to a speedy trial. The Ohio Supreme Court found the statutory speedy trial provisions of R.C. 2945.71et seq. and the constitutional guarantees found in the United States and Ohio Constitutions to be coextensive. State v. O'Brien (1987),34 Ohio St.3d 7, 9. Consistent with this principle, the court held that "[t]he statutory speedy trial provisions, R.C. 2945.71 et seq., constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor and shall be strictly enforced by the courts of this state." State v. Pachay (1980), 64 Ohio St.2d 218, syllabus.
R.C. 2945.71(C)(2) provides that "[a] person against whom a charge of felony is pending: * * * Shall be brought to trial within two hundred seventy days after [the person's] arrest." In addition, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). However, R.C.2945.71(E) "`is applicable only to those defendants held in jail in lieu of bail solely on the pending charge.'" (Emphasis added.) State v.Brown (1992), 64 Ohio St.3d 476, 479, quoting State v. MacDonald (1976),48 Ohio St.2d 66, paragraph one of the syllabus. As a parole violation is a separate offense within the meaning of the statute, "[t]he existence of a valid parole holder prevents the application of the triple-count provisions of R.C. 2945.71(E)." Brown, 64 Ohio St.3d at 479. Consequently, the accused must be brought to trial within two-hundred and seventy days of his arrest, under R.C. 2945.71(E). State v. Jones
(1992), 81 Ohio App.3d 348, 351.
In the present case, Mr. Nixon argues that the state did not produce sufficient evidence of a parole holder, and therefore, the triple-count provisions should apply, and accordingly, the charges against him should be dismissed. Mr. Nixon, however, raises this argument for the first time on appeal. In Brown, 64 Ohio St.3d at 481, the Ohio Supreme Court dealt with a similar argument. In Brown, the defendant moved to dismiss the indictment based upon the triple-count provisions of R.C. 2945.71(E).Id. at 477. The state countered that a parole holder had been placed on defendant, and therefore, the triple-count provision did not apply. Id. The trial court held oral argument on defendant's motion to dismiss, during which the state asserted that there was a parole holder on defendant; defense counsel did not dispute the existence of the parole holder. Id. at 481. A copy of the parole holder was not placed in the record. Id. at 482. Subsequently, the trial court overruled defendant's motion to dismiss. Id. at 481. For the first time on appeal, appellate counsel asserted that the record did not demonstrate the existence of a valid parole holder on defendant. Id. at 481. The Ohio Supreme Court stated that "[a]ny question regarding the existence of the parole holder should have been raised in the trial court. `[W]e must presume the set of facts that validates, rather than invalidates, the judgment [below].'" (Alterations original and citation omitted.) Id. The court further went on to find that despite the lack of a copy of the parole holder in the record,
 there was other sufficient evidence of the parole holder for the trial court to deny Brown's motion to dismiss. The transcripts of the hearing on the motion to dismiss [during which defense counsel did not dispute the existence of a parole holder] and the in-chambers conference on the day of trial [during which the trial court overruled the motion to dismiss, apparently based on the existence of a parole holder, and during which Brown's counsel did not assert that there was no parole holder] provide sufficient evidence of a parole holder.
Id. at 482.
In the case sub judice, Mr. Nixon's counsel raised the issue of whether there was sufficient evidence of a parole holder for the first time on appeal; therefore, we must presume the set of facts that validates the trial court's judgment. See id. at 481. Here, the state produced a copy of the "Order of Hold," issued on February 22, 1999, in its brief in opposition to Mr. Nixon's motion to discharge. Further, during the hearing on the motion to discharge, Mr. Nixon never denied that he was on parole at that time and did not argue that the initial institution of the order of hold was invalid. Moreover, in his memorandum in support of his motion to dismiss, Mr. Nixon admitted that a parole detainer was placed upon him on February 22, 1999. Consequently, we conclude that this evidence was sufficient to establish that a valid parole holder was placed upon Mr. Nixon on February 22, 1999. See id. at 482.
In the alternative, Mr. Nixon contends that the detainer expired or became invalid when he was not given an on-site (preliminary) hearing within ten days of his detention pursuant to Ohio Adm. Code 5120:1-1-31, in accordance with former Ohio Adm. Code 5120:1-1-18. We first note that Ohio Adm. Code 5120:1-1-18 was amended in 1996 and the applicable version of the code no longer requires that an on-site hearing be held within ten days of detention. Nevertheless, parole revocation implicates a liberty interest which cannot be denied without certain procedural protections.Morrissey v. Brewer (1972), 408 U.S. 471, 482, 33 L.Ed.2d 484, 495. Due process requires two hearings: a preliminary hearing to determine if probable cause exists to believe that the parolee has violated his parole conditions and a final parole revocation hearing. Id. at 485-88,33 L.Ed.2d at 496-98. One of the underlying purposes of the preliminary hearing is to prevent unjust imprisonment during the "substantial time lag between the arrest and the eventual determination by the parole board whether parole should be revoked." Id. at 485, 33 L.Ed.2d at 496; seeState v. Delaney (1984), 11 Ohio St.3d 231, 233. A preliminary hearing is unnecessary, however, if a parolee is arrested for a new crime and has been bound over to the grand jury at a preliminary hearing conducted by a judicial officer. Inmates' Councilmatic Voice v. Rogers (C.A.6, 1976),541 F.2d 633, 635-36. Similarly, "an indictment returned by the Grand Jury constitutes prima facie evidence of probable cause under Ohio law."Id. at 635.
Here, the record reflects that a municipal court judge conducted a preliminary hearing, found that probable cause existed as to certain charges, and bound Mr. Nixon over to the grand jury. Moreover, the grand jury subsequently indicted Mr. Nixon on two counts of rape and four counts of kidnapping, among others charges. Accordingly, we conclude that the trial court did not err in finding that a valid parole holder existed and that, therefore, the triple-count provisions of R.C. 2945.71(E) did not apply.
As Mr. Nixon was incarcerated for over 450 days while awaiting trial, we next turn to consider whether any of the tolling provisions of R.C.2945.72 applied to extend the time within which Mr. Nixon must be brought to trial. "Pursuant to R.C. 2945.72(B), the time within which an accused must be brought to trial is tolled from the date the accused files a motion challenging his competency to stand trial." State v. Palmer
(1998), 84 Ohio St.3d 103, paragraph one of the syllabus. Further, "[t]he tolling of R.C. 2945.72(B) continues until the trial court makes a competency determination[.]" Id. at paragraph two of the syllabus. In addition, the time within which an accused may be brought to trial may also be extended due to "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]" R.C. 2945.72(H). The trial judge must rule within a reasonable amount of time on a motion filed by the defendant. State v. Arrizola (1992), 79 Ohio App.3d 72,75-76.
The time within which Mr. Nixon must have been brought to trial was tolled by the following events: 1) on June 29, 1999, pretrial was continued at Mr. Nixon's request and was subsequently held on July 13, 1999; 2) on August 10, 1999, Mr. Nixon filed a motion to determine his competency to stand trial and changed his plea to not guilty by reason of insanity ("NGRI"). He withdrew his NGRI plea on October 26, 1999; 3) Mr. Nixon also filed two separate motions to suppress on July 19, 1999 and September 20, 1999; and lastly, 4) Mr. Nixon moved to dismiss on November 29, 1999 — a hearing on the matter was promptly held on December 20, 1999 and further briefing on the issue was requested by the trial court. After doing the calculations, we find that Mr. Nixon was brought to trial within 270 days as prescribed by R.C 2945.71(C)(2). Accordingly, Mr. Nixon's third assignment of error is overruled.
 D. Fourth Assignment of Error THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE THE KIDNAPPING COUNTS WITH THE RAPE COUNTS, THE DOMESTIC VIOLENCE COUNT WITH THE FELONIOUS ASSAULT COUNT AND THE AGGRAVATED MENACING COUNT WITH THE COUNT SIX KIDNAPPING COUNT IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND REVISED CODE § 2941.25.
In his fourth assignment of error, Mr. Nixon argues that failing to merge various offenses, pursuant to R.C. 2941.25, constituted plain error, as Mr. Nixon's trial counsel did not request the merger of the offenses. We disagree.
The Double Jeopardy Clauses of the United States and Ohio Constitutions protect criminal defendants from multiple punishments for the same offense. State v. Rance (1999), 85 Ohio St.3d 632, 634. "The General Assembly has reinforced the principles and concepts contained in the Double Jeopardy Clause through R.C. 2941.25." State v. Fields (Aug. 9, 2000), Wayne App. No. 99CA0062, unreported, at 8. R.C. 2941.25
provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
In determining whether two crimes are allied offenses of similar import, the Ohio Supreme Court has stated:
 With its multiple-count statute Ohio intends to permit a defendant to be punished for multiple offenses of dissimilar import. R.C. 2941.25(B); State v. Blankenship (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816, 817. If, however, a defendant's actions "can be construed to constitute two or more allied offenses of similar import," the defendant may be convicted (i.e. found guilty and punished) of only one. R.C. 2941.25(A). But if a defendant commits offenses of similar import separately or with a separate animus, he may be punished for both pursuant to R.C. 2941.25(B). State v. Jones (1997), 78 Ohio St.3d 12, 13-14, 676 N.E.2d 80, 81.
 * * * The applicable test for deciding that issue is as follows: If the elements of the crimes "`correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import.'" Id. at 13, 676 N.E.2d at 81, quoting Blankenship, 38 Ohio St.3d at 117, 526 N.E.2d at 817. If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted. R.C. 2941.25(B). See, also, State v. Mughni (1987), 33 Ohio St.3d 65, 68, 514 N.E.2d 870, 873.
(Emphasis original.) Rance, 85 Ohio St.3d at 636. Moreover, when comparing the elements of the offenses, the "elements should be compared in the statutory abstract." Id. at 637.
We must first determine whether in the abstract, the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, and therefore, the crimes are of similar import. Id. at 636. If they are offenses of similar import, then we must determine whether the defendant committed those offenses separately or with a separate animus. Id. If the offenses were committed separately or with a separate animus, the defendant may be punished for both offenses. Id. No one factor is dispositive in determining whether there were separate acts or animi. State v. Jones
(1997), 78 Ohio St.3d 12, 14.
Mr. Nixon first asserts that his convictions for rape and kidnapping must be merged, as they are allied offenses of similar import. Mr. Nixon was convicted of kidnapping, in violation of R.C. 2905.01(A)(4), which requires the state to prove that the purpose of the kidnapping was to engage in sexual activity. Mr. Nixon argues that these two offenses should merge because the state had to prove the rape charge as an element of the kidnapping charge. We disagree.
This court has recognized that convictions for kidnapping and rape are allied offenses of similar import. Fields, supra, at 10. Therefore, we must determine whether under the facts of this case, the offenses of rape and kidnapping of Ms. Nixon, as contained in counts one and five of the indictment, were committed separately or with a separate animus. We find that they were.
The Ohio Supreme Court has held that with regard to kidnapping and another offense:
 (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
 (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in the risk of harm separate and apart from that involved in the underlying crime * * *.
State v. Logan (1979), 60 Ohio St.2d 126, syllabus.
Here, Mr. Nixon kidnapped Ms. Nixon when he prevented her from leaving the house by wielding a bat and threatening to kill her. Ms. Nixon remained in the house against her will for many hours, being moved from room to room at Mr. Nixon's command. At one point during that time, Mr. Nixon vaginally, orally, and anally raped her in the bedroom. Hence, we conclude that as Ms. Nixon's restraint continued over many hours and was not merely incidental to the rape, the rape and kidnapping of Ms. Nixon were committed with separate animi, and thus, Mr. Nixon could be punished for both offenses.
We decline to address whether count two (the rape of Mr. Squires) and count four (kidnapping of Mr. Squires) must be merged, as our reversal of the rape conviction contained in count two, renders the issue moot. See App.R. 12(A)(1)(c).
Next, Mr. Nixon contends that his convictions for domestic violence and felonious assault should have been merged by the trial court, as Ms. Nixon was assaulted only once. Ms. Nixon, however, was assaulted multiple times by Mr. Nixon on February 20, 1999. She testified that, at one point, Mr. Nixon came into the bedroom, said he wanted to have more "fun," and when she refused, he hit her with his fist and choked her. She also testified that while she was showering, Mr. Nixon struck her because she was not getting cleaned-up quickly enough. Both these incidents could constitute domestic violence, as Ms. Nixon was a household member at that time. Further, both Mr. Squires and Ms. Nixon related that at another time, Mr. Nixon, while threatening to kill them and swinging the baseball bat, struck Ms. Nixon with the bat. This incident is sufficient to constitute felonious assault, in violation of R.C. 2903.11(A)(2). Consequently, even if we were to find that these crimes are allied offenses of similar import, we conclude that they were committed separately, and therefore, Mr. Nixon could be punished for both offenses.
Lastly, Mr. Nixon urges us to find that count six (kidnapping), in violation of R.C. 2905.01(A)(3),[5] and count ten (aggravated menacing) were allied offenses of similar import, and that because the state elected against having Mr. Nixon sentenced on count six (kidnapping), the aggravated menacing conviction must also fall, as it was subsumed by count six. This argument is without merit. The state elected to have Mr. Nixon sentenced on the other counts of kidnapping but not on count six, which the trial court did in its May 31, 2000 sentencing entry. Mr. Nixon was also sentenced on the aggravated menacing charge, among others. "The prosecution may choose which allied offenses of similar import it wishes to pursue after trial." State v. Merkle (Jan. 31, 2001), Lorain App. No. 00CA007571, unreported, at 15. Here, the state elected to pursue the other kidnapping charges and not to pursue the kidnapping charge contained in count six of the indictment. Hence, any error in failing to merge counts six and ten is moot, and we decline to address this issue. See id.
Accordingly, Mr. Nixon's fourth assignment of error is overruled in part and rendered moot in part.
 E. Sixth Assignment of Error THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT DEFENDANT-APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE SEIZED FROM DEFENDANT-APPELLANT'S HOME AS A RESULT OF A WARRANTLESS SEARCH IN VIOLATION OF DEFENDANT-APPELLANT'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION.
In his sixth assignment of error, Mr. Nixon contends that the trial court erred in denying his motion to suppress the evidence seized from his home, pursuant to a warrantless search. Specifically, he argues that Ms. Nixon did not have authority to consent to the search because she did not sign the lease and did not make any utility payments. We disagree.
The Fourth Amendment generally prohibits the warrantless search of a person's residence. See Illinois v. Rodriguez (1990), 497 U.S. 177,181, 111 L.Ed.2d 148, 156. "The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises[.]" (Citations omitted.)Id; see, also, State v. Sneed (1992), 63 Ohio St.3d 3, 7. "Common authority * * * rests on the mutual use of the property by persons generally having joint access or control for most purposes[.]" UnitedStates v. Matlock (1974), 415 U.S. 164, 171, 39 L.Ed.2d 242, 250, fn. 7.
In the present case, we find that Ms. Nixon possessed authority to give consent to search the 5th Street residence on February 20, 1999. At the suppression hearing, officers of the Elyria Police Department testified that they obtained Ms. Nixon's voluntary written consent to search 254 5th Street, based on her representations that she lived there with her ex-husband, Mr. Nixon. Mr. Nixon's testimony was consistent with this information. He testified that both he and Ms. Nixon moved into the 5th Street residence approximately two weeks prior to February 20, 1999 and that their daughter and Ms. Nixon's son also resided there. All four individuals kept their clothing at the residence. Mr. Nixon further testified that Ms. Nixon and the children had access to all rooms in the property. Consequently, we hold that the trial court did not err in denying Mr. Nixon's motion to suppress. Mr. Nixon's sixth assignment of error is overruled.
 F. Fifth Assignment of Error THE TRIAL COURT ERRED BY ORDERING CONSECUTIVE SENTENCES WHEN IT FAILED TO MAKE ALL THE NECESSARY FINDINGS REQUIRED BY REVISED CODE § 2929.14(E)(4), AND FAILED TO GIVE ANY REASONS FOR THE FINDINGS IT DID MAKE.
In his fifth assignment of error, Mr. Nixon contends that the trial court did not make the statutorily required findings when it sentenced him to consecutive terms of imprisonment. Mr. Nixon also asserts that the trial court's statements at the sentencing hearing and in the journal entry, reciting the court's decision and reasoning, were insufficient to fulfill the statutorily required findings for imposition of consecutive sentences. We disagree.
Our standard of review is controlled by R.C. 2953.08(G), requiring us to determine if the trial court made the required statutory findings and clearly and convincingly acted contrary to law or the record. Clear and convincing evidence is that "`which will provide [sic] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" Cincinnati Bar Assn. v. Massengale (1991),58 Ohio St.3d 121, 122, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
R.C. 2929.14 governs the imposition of prison terms for felony convictions, stating, in relevant part:
 (E)(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offences was so great or unusual that no single prison term for any of the offences committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
"This Court has already extended the rationale of Edmonson to require the trial court to make findings and give its reasons to support the imposition of consecutive sentences." State v. Riggs (Oct. 11, 2000), Summit App. No. 19846, unreported, at 2. This court may review both the transcript of the sentencing hearing and the journal entry in determining whether the trial court has complied with Edmonson. Id. at 3-4.
In the instant case, we find that the trial court made all of the requisite findings in its sentencing entry[6] for imposing consecutive sentences. The trial court found that "[c]onsecutive sentences are necessary to protect the public from future crime or to punish the defendant and [are] not disproportionate to the seriousness of the defendant's conduct and the danger the defendant poses to the public." It also concluded that all of the reasons enumerated in R.C.2929.14(E)(4)(a)-(c) applied, finding that "[t]he defendant committed the multiple offenses while the defendant was * * * under a post release control sanction," that "[t]he harm caused by the defendant was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the defendant's conduct," and that "[t]he defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the defendant."
The court also gave sufficient reasons to support its findings, stating that the crimes committed were unusually perverse because he forced two unwilling people to engage in sexual activities and because he "forced [his] former wife, the mother of [his] children, into prostitution, and perverted sex, and said it was fun." Accordingly, we hold that the trial court made the statutorily required findings and gave sufficient reasons to support its findings when it sentenced him to consecutive terms of imprisonment. Mr. Nixon's fifth assignment of error is overruled.
 G. Seventh Assignment of Error THE TRIAL COURT ERRED WHEN IT REQUIRED DEFENDANT-APPELLANT TO GO FORWARD ON THE HEARING ON THE DETERMINATION OF HIS SEXUAL PREDATOR STATUS IMMEDIATELY UPON RECEIVING THE VERDICT IN THE CASE WITHOUT PROVIDING DEFENDANT-APPELLANT WITH NOTICE OF THE TIME AND PLACE OF THE HEARING IN VIOLATION OF REVISED CODE § 2950.09(B)(1), THEREBY DENYING DEFENDANT-APPELLANT HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
In his seventh assignment of error, Mr. Nixon argues that the trial court erred when it required Mr. Nixon to go forward with the sexual offender classification hearing without proper advance notice of the hearing issued to the parties, pursuant to R.C 2950.09(B)(1). In its brief, the state agrees that Mr. Nixon's classification as a sexual predator must be vacated and the matter remanded to the trial court for a sexual predator classification hearing with proper advance notice. We also agree.
R.C. 2950.09(B)(1) provides that
 the judge who is to impose sentence upon the offender shall conduct a hearing to determine whether the offender is a sexual predator. The judge shall conduct the hearing prior to sentencing and, if the sexually oriented offense is a felony, may conduct it as part of the sentencing hearing required by section 2929.19 of the Revised Code. The court shall give the offender and the prosecutor who prosecuted the offender for the sexually oriented offense notice of the date, time, and location of the hearing.
(Emphasis added.) "Defendants must have notice of the hearing in order to `have an opportunity to testify, present evidence, call and examine witnesses and expert witnesses, and cross-examine witness and expert witnesses regarding the determination as to whether the offender is a sexual predator.'" State v. Gowdy (2000), 88 Ohio St.3d 387, 398, quoting R.C. 2950.09(B)(1). In Gowdy, the Ohio Supreme Court held that "[t]he notice requirement for sexual offender classification hearings under R.C. 2950.09(B)(1) is mandatory." Gowdy, 88 Ohio St.3d at syllabus. The court went on to state that "[n]otice of the sentencing hearing is not sufficient notice of the sexual offender classification hearing. Absent compliance with the mandatory notice provision, [a] defendant's classification as a sexual predator must be vacated and the matter remanded to the trial court for a sexual offender classification hearing with proper advance notice of the hearing issued to the parties."Id. at 399.
In the present case, Mr. Nixon was not given proper advance notice of the sexual offender classification hearing. Immediately after the verdict was rendered and the jury discharged, the trial court informed defense counsel that it intended to proceed with the sexual offender classification hearing without delay. Defense counsel objected due to lack of notice of the hearing. Nevertheless, the hearing was held that day, and the trial court adjudicated Mr. Nixon a sexual predator a few days later at the sentencing hearing. Accordingly, we conclude that Mr. Nixon was not given proper advance notice of the sexual offender classification hearing pursuant to R.C. 2950.09(B)(1), and therefore, we vacate his classification as a sexual predator and remand this matter to the trial court for a sexual offender classification hearing with proper advance notice of the hearing issued to the parties. Mr. Nixon's seventh assignment of error is sustained.
 H. Eighth Assignment of Error DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 A. COUNSEL'S PERFORMANCE WAS BELOW AN OBJECTIVE STANDARD OF REASONABILITY DUE TO HIS FAILURE TO REQUEST THE MERGER OF THE KIDNAPPING COUNTS WITH THE RAPE COUNTS, THE DOMESTIC VIOLENCE COUNT WITH THE FELONIOUS ASSAULT COUNT AND THE AGGRAVATED MENACING COUNT WITH THE COUNT SIX KIDNAPPING COUNT.
 B. COUNSEL'S PERFORMANCE WAS BELOW AN OBJECTIVE STANDARD OF REASONABILITY DUE TO HIS FAILURE TO OBJECT TO THE ADMISSION OF EVIDENCE SEIZED FROM DEFENDANT-APPELLANT'S HOME.
 C. COUNSEL'S PERFORMANCE WAS BELOW AN OBJECTIVE STANDARD OF REASONABILITY DUE TO HIS FAILURE TO ASCERTAIN THE TIME AND PLACE OF THE HEARING ON THE SEXUAL OFFENDER CLASSIFICATION, TO BE PREPARED TO PROCEED FORWARD WITH THE HEARING IMMEDIATELY AFTER THE VERDICT WAS RETURNED AND HIS FAILURE TO PROPERLY PLACE UPON THE RECORD THE EVIDENCE AND TESTIMONY WHICH WOULD HAVE BEEN PRESENTED HAD HE BEEN GIVEN NOTICE OF THE HEARING.
 D. COUNSEL'S PERFORMANCE WAS BELOW AN OBJECTIVE STANDARD OF REASONABILITY DUE TO HIS FAILURE TO CHALLENGE THE TRIAL COURTS [sic] DETERMINATION AS TO THE EXISTENCE OR LACK OF SAME OF INCONSISTENCIES BETWEEN STEPHANIE NIXON'S TRIAL TESTIMONY AND HER PRIOR STATEMENT TO THE POLICE.
In his eighth assignment of error, Mr. Nixon avers that he was denied the effective assistance of trial counsel, as guaranteed by the United States and Ohio Constitutions. He points to four specific instances of alleged ineffectiveness: 1) his counsel's failure to request the merger of specific counts in the indictment, 2) his counsel's failure to object to the admission of evidence seized from his residence, 3) his counsel's failure to ascertain the time and place of the sexual predator hearing, and 4) his counsel's failure to challenge the trial court's determination as to the inconsistencies between Ms. Nixon's trial testimony and her prior tape-recorded statement to the police. We disagree.
A two-step process is employed in determining whether the right to effective counsel has been violated.
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693. In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 80 L.Ed.2d at 695. The defendant has the burden of proof, and must overcome the strong presumption that counsel's performance was adequate and that counsel's action might be sound trial strategy. State v. Smith (1985), 17 Ohio St.3d 98, 100. Furthermore, an attorney properly licensed in Ohio is presumed competent. State v. Lott (1990), 51 Ohio St.3d 160, 174.
First, Mr. Nixon urges that he was denied the effective assistance of trial counsel when his trial counsel failed to raise the issue of the merger of certain counts before the trial court. As previously discussed, the merger of various counts in the indictment would be inappropriate in this case; therefore, we conclude that trial counsel's performance was not deficient and that even if counsel's performance were deficient, it did not prejudice the defense.
Next, Mr. Nixon argues that he was denied the effective assistance of counsel due to his trial counsel's failure to object to the admission of evidence seized from the 5th Street residence. As previously noted, the trial court properly denied Mr. Nixon's motion to suppress, as the search was conducted pursuant to valid consent obtained from Ms. Nixon. Hence, we conclude that trial counsel's performance in this matter was not deficient and did not prejudice the defense.
In addition, Mr. Nixon avers that his trial counsel should have ascertained the time and date of the sexual offender classification hearing, so that he could present a meaningful defense to the sexual predator classification. As previously discussed, we have vacated Mr. Nixon's classification as a sexual predator and remanded this cause for a sexual offender classification hearing with proper notice to the parties; therefore, we decline to address this portion of this assignment of error, as it has been rendered moot by our disposition of Mr. Nixon's seventh assignment of error. See App.R. 12(A)(1)(c).
Lastly, Mr. Nixon contends that his trial counsel failed to object to the trial court's determination that there were only minor inconsistencies between Ms. Nixon's trial testimony and the prior tape-recorded statement made by her to Detective Al Leiby, and therefore, he was denied the effective assistance of counsel. We disagree. Following Ms. Nixon's direct testimony, an in camera review of her audio-taped statement to police was held. The trial court found that only one minor inconsistency existed. Mr. Nixon asserts that because his trial counsel did not object to the trial court's determination, his counsel was ineffective. However, Mr. Nixon's counsel continued to attempt to introduce the alleged inconsistencies between Ms. Nixon's trial testimony and her prior statement, during his cross-examination of Detective Leiby. When the trial court sustained the state's objections to the admission of the prior statements made by Ms. Nixon, Mr. Nixon's trial counsel proffered what the testimony would have been if it had been permitted and enumerated various alleged inconsistencies. Mr. Nixon's counsel repeatedly tried to bring into evidence these alleged inconsistencies. In light of counsel's various efforts to introduce such evidence despite the trial court's ruling that it was inadmissible, we cannot conclude that Mr. Nixon's counsel's performance was deficient. Further, even if counsel's performance was deficient, we find that it did not prejudice the defense and deprive Mr. Nixon of a fair trial.
Accordingly, Mr. Nixon's eighth assignment of error is rendered moot as to his argument regarding the sexual offender classification hearing and overruled as to his remaining arguments.
 I. Ninth Assignment of Error THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his ninth assignment of error, Mr. Nixon asserts that his convictions were against the manifest weight of the evidence. Without any elaboration, Mr. Nixon argues that "[w]hen [the] evidence which should properly have been excluded, as set forth herein, is removed from the trial of this case, it becomes clear that the verdict in this case was against the manifest weight of the evidence." We disagree.
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Otten, 33 Ohio App.3d at 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
Previously, we addressed this assignment of error as it pertains to Mr. Nixon's conviction for the rape of Mr. Squires. Mr. Nixon's conviction on that specific charge was reversed, and consequently, his ninth assignment of error was sustained in part. Regarding his remaining convictions, we find that after a thorough review of the record, the jury did not act against the manifest weight of the evidence in rendering a guilty verdict as to those convictions. Accordingly, Mr. Nixon's ninth assignment of error is overruled in part.
 III.
Mr. Nixon's first, second, third, fifth, and sixth assignments of error are overruled. His fourth and eighth assignments of error are overruled in part and rendered moot in part. His ninth assignment of error is sustained in part and overruled in part. His seventh assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for proceedings consistent with this opinion.
The Court finds that there were reasonable grounds for these appeals.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed equally to both parties.
Exceptions.
______________________________________ WILLIAM G. BATCHELDER
BAIRD, J. CONCURS.
[1] We will address whether Mr. Nixon's remaining convictions are against the manifest weight in a later section of this opinion.
[2] We note that whether the victim is the spouse of the offender is not an element of rape, pursuant to R.C. 2907.02(A)(2).
[3] The bill of particulars gave Mr. Nixon additional notice that the state may have pursued a charge of complicity to commit rape. The bill of particulars stated in pertinent part that "[t]he defendant forced Stephanie Nixon to perform cunnilingus on the victim [Ted Squires]." Although it would have been helpful if the state employed the correct terminology, "fellatio" rather than "cunnilingus," we find that the foregoing was sufficient to give Mr. Nixon further notice that the state may have pursued a complicity charge.
[4] The reversal of the rape charge contained in count two does not affect Mr. Nixon's overall sentence, as he was sentenced to eight years in prison for count one and eight years for count two. These sentences were ordered to be served concurrently to one another, but consecutively to other counts.
[5] R.C. 2905.01(A)(3) contains as an element the purpose to "terrorize" the victim.
[6] The trial court did not make all of the statutorily required findings during the sentencing hearing, but did make the findings in its journal entry for sentencing.