[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 178.]

THE STATE OF OHIO, APPELLEE, *v*. JOY, APPELLANT.

[Cite as *State v. Joy*, 1995-Ohio-259.]

*Criminal law—Aggravated theft by deception—Trial court did not err in failing to instruct jury on one of the statutory definitions of "deprive," an element of aggravated theft by deception, when.*

(No. 94-651—Submitted October 11, 1995—Decided December 20, 1995.)

APPEAL from the Court of Appeals for Lucas County, No. L-93-032.

_____

{¶ 1} On June 24, 1992, appellant, Lowell Joy, was indicted in Lucas County for one count of aggravated theft pursuant to R.C. 2913.02(A)(2), and for one count of aggravated theft pursuant to R.C. 2913.02(A)(3). The following facts were adduced at his jury trial.

{¶ 2} In 1991, appellant was President of REMSNO, a not-for-profit agency that provided a multi-county communications system between life squads and hospitals. REMSNO was funded in large part by a tax levy in Lucas County. However, in November 1991, REMSNO lost its major funding when the Lucas County tax levy was defeated. At that time, REMSNO had a balance on deposit of $500,000.

{¶ 3} In early January 1992, appellant approached Operations Director, John Mason, and asked him how much it would cost to run REMSNO for 1992 and what the interest rate was for the funds on deposit. Mason told appellant that it would cost between $125,000 to $150,000 to run REMSNO and that the interest rate they were receiving was about four percent. Appellant said that he could get a much more favorable interest rate at his bank in Marblehead because of the volume of business that his companies did with that bank.

**{¶ 4}** Appellant and Mason met again on January 21, 1992. According to Mason, appellant said he would deposit REMSNO's money in the bank at Marblehead and that REMSNO would receive seven and a quarter percent interest on those funds. Mason then issued a check for $350,000, as directed by appellant, made payable to Motivation Enterprises, a company owned solely by appellant. The check, which was postdated to January 24, 1992, contained the notation, "Investment Deposit."

**{¶ 5}** On January 22, 1992, Mason typed up a memorandum for the file evidencing that appellant would deposit this check "with the Marblehead [B]ank as an investment at a rate of approximately seven percent." The memorandum further stated that the funds belong to REMSNO and that REMSNO would receive interest payments on a monthly or quarterly basis.

**{¶ 6}** In mid-February, Mason received the first interest check and a document that he understood to be a verification of the above transaction. In actuality, it indicated that the money was being loaned to appellant. Mason did not discover that the money was being used as a "loan" until it was brought to his attention in a March audit. Mason told accountants from Ernst & Young that the money was being invested and was not a loan.

**{¶ 7}** Upon reading the audit, Mason contacted REMSNO's attorney, Frank Pizza. On April 1, 1992, a meeting was held at REMSNO's office with Pizza, appellant, and Mason. Pizza asked appellant where the money was located, but appellant did not really answer him. At the end of the meeting, appellant said he would look into whether or not he could pay the money back. Pizza testified there was another meeting on May 13, 1992, at his office. At that meeting, REMSNO's Executive Director, Dr. Robert Hauman, told appellant to pay the money back right away. Appellant then responded that the money was invested in a real estate transaction and he could not get the money out right now. Subsequently, Dr.

Hauman had a phone conversation with appellant and was told by him that the money was in one of appellant's businesses.

{¶ 8} Instead of placing the money in an interest bearing account at Marblehead Bank, it was discovered that appellant had placed the money in a noninterest paying checking account of Motivation Enterprises. As of early January 1992, Motivation Enterprises had a balance of only $574.75. After the deposit of $350,000, the money was then almost immediately transferred to a checking account of a second business owned by appellant, a marina. The money was then dissipated from this account within several weeks to pay off the bills of the marina. According to appellant, this money was finally paid back to REMSNO one day before sentencing in this case, which was approximately one year after it was taken. This was also the date that the principal was required to be paid back under the terms of the alleged note.

{¶ 9} At the conclusion of the trial, the jury returned a verdict of not guilty for aggravated theft, but guilty for aggravated theft by deception. Appellant was fined $7,500 and sentenced to a term of three to ten years in a correctional facility. The trial court then issued a *nunc pro tunc* entry stating that the sentence was a term of three to fifteen years in a correctional facility. The court of appeals affirmed the conviction and sentence.

{¶ 10} This matter is now before this court upon an allowance of a discretionary appeal.

_____

*Anthony G. Pizza,* Lucas County Prosecuting Attorney, *Curtis E. Posner* and *George J. Conklin,* Assistant Prosecuting Attorneys, for appellee.

*Fritz Byers,* for appellant.

_____

**FRANCIS E. SWEENEY, JR., J**.

{¶ 11} The issue before this court is whether the trial court erred in failing to instruct the jury on one of the statutory definitions of "deprive," an element of aggravated theft by deception. For the following reasons, we find that the trial court did not err in refusing to give this requested instruction. Accordingly, the judgment of the court of appeals is affirmed.

{¶ 12} The elements of aggravated theft by deception are found in R.C. 2913.02(A)(3), which reads:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"***

"(3) By deception ***."

R.C. 2913.01(C) lists the definitions of "deprive" as follows:

"(C) 'Deprive' means to:

"(1) Withhold property of another permanently, or for such period as to appropriate a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

"(2) Dispose of property so as to make it unlikely that the owner will recover it;

"(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse of not giving proper consideration."
The trial court instructed the jury as to the first two definitions of "deprive," but omitted the third definition on the ground that it was superfluous.

{¶ 13} The rule regarding jury instructions is that requested instructions in a criminal case must be given when they are correct, pertinent, and timely presented. *Cincinnati v. Epperson* (1969), 20 Ohio St.2d 59, 49 O.O.2d 342, 253

N.E.2d 785, paragraph one of the syllabus. The court must give all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the factfinder. *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, paragraph two of the syllabus.

{¶ 14} In the present case, the state had to prove that appellant intended to deprive REMSNO of money based on only one of the three alternate definitions of "deprive." Appellant argued at the court of appeals level, and now to this court, that the third definition of "deprive" was also part of the state's presentation of the case and, thus, the trial court's failure to instruct the jury on this definition constituted reversible error. However, at the outset we note that had this instruction been given it could not have benefited the appellant, as it would only have given the jury a third independent basis upon which to find that he intended to deprive REMSNO of money. Thus, appellant is not prejudiced by this alleged error.

{¶ 15} Furthermore, we agree with the state's contention that the evidence before the jury supported only the first two definitions of "deprive." Specifically, the state argues that the evidence supported the second clause of the first definition of "deprive" that appellant had withheld the money "for such period as to appropriate a substantial portion of its value or use." R.C. 2913.01(C)(1).

{¶ 16} Based on our review of the record, we find that the trial court properly refused to give the third definition of "deprive" dealing with consideration. The state's presentation of the case, including opening and closing arguments, did not rest on a theory that appellant failed to provide consideration for the "note." Likewise, the trial court did not discuss whether appellant provided consideration for the "note." Instead, in overruling appellant's Civ.R. 29 motion for acquittal, the court reasoned that "there is evidence from which the jury could reasonably infer a purpose to deprive, and in that respect I would stress that purpose to deprive does not require demonstration of permanent deprivation but rather a purpose to withhold for such a period as to appropriate a substantial portion of the value of the

property in question." Thus, the trial court agreed with the state's theory of the case, as the court found evidence to support the second clause of the first definition of "deprive." At the conclusion of trial, the court found that the third definition of "deprive" was not relevant to the case and, thus, refused to give this instruction, as it would only confuse the jury.

{¶ 17} In addition, appellant does not challenge the sufficiency of the evidence to support the conviction based on the instructions of purpose to deprive which were properly given to the jury. Thus, appellant's conviction is supported by the jury's finding appellant guilty of one or both of these instructions. Specifically, we find that sufficient evidence was presented to the jury for it to conclude beyond a reasonable doubt that appellant intended to deprive REMSNO of money based on the first definition of "deprive," *i.e.*, that the appellant intended to withhold money "for such period as to appropriate a substantial portion of its value or use."

{¶ 18} The record reflects that appellant told REMSNO that the money would be invested at approximately seven percent interest at Marblehead Bank. Instead, appellant appropriated all of this money for his own use by placing the money in a noninterest bearing account of one of his businesses and then immediately transferring the money to another business he owned, a marina. Appellant then used the money to pay his marina bills, thus depriving REMSNO of the value and use of the money. When REMSNO personnel discovered that they had been deceived and that the money was not safely placed in an interest bearing account at the bank, they asked appellant to return the money immediately. However, appellant initially stated that he would look into whether he could pay the money back and then he lied about the whereabouts of the money. Appellant finally admitted that he could not return the money. REMSNO was deprived of the money's use until it was apparently returned one day before sentencing in this case, which was approximately one year after it was taken. Based on the above and the

other evidence presented at trial, we conclude that the jury could have found beyond a reasonable doubt that appellant had withheld the money for such period as "to appropriate a substantial portion of its value or use."

{¶ 19} Finally, we agree with appellant's contention that the court of appeals erred in concluding that sufficient evidence existed to support his conviction based on the third definition of "deprive" dealing with consideration. In so finding, the appellate court incorrectly interpreted the law of contracts by stating that evidence of inadequate collateral in this case was proof of lack of consideration. Collateral is not a requirement of consideration. Restatement of the Law 2d, Contracts (1981) 172, Section 71. Thus, the court of appeals' conclusion that appellant's conviction was supported by the third definition of "deprive" was misguided. As we have previously stated, appellant's conviction was supported by at least one of the two definitions of "deprive" which were properly given to the jury.

{¶ 20} In conclusion, the third definition of "deprive" dealing with the issue of whether appellant gave consideration in exchange for receiving the money was not the theory behind the state's presentation of this case and, thus, an instruction on this definition would have served only to confuse the jury. The trial court properly instructed the jury only on the first two definitions of "deprive." We conclude that sufficient evidence existed to support appellant's conviction based on the first definition of "deprive" which was properly given to the jury. Accordingly, we affirm the judgment of the court of appeals upholding appellant's conviction.

*Judgment affirmed.*

MOYER, C.J., WRIGHT, HOFFMAN, PFEIFER and COOK, JJ., CONCUR.

DOUGLAS, J., not participating.

WILLIAM B. HOFFMAN, J., of the Fifth Appellate District, sitting for RESNICK, J.

————————————