OPINION
This is an appeal from the judgment and sentence of the Court of Common Pleas of Hancock County, following a jury verdict finding defendant-appellant Ronnie E. Wright (Wright) guilty of two counts of burglary under R.C. 2911.12(A)(1) and one count of possessing criminal tools under R.C. 2923.24, wherein the Court sentenced Wright to a fourteen year and eleven month prison term.
At approximately 4:45 a.m. on September 14, 2000, Katherine Wilson came down the stairs of her home to find a man leaving her home. She turned on the outside lights and watched him walk across her deck and through her back yard. At that time, she observed his clothing, hair, build, and the side of his face. Ms. Wilson then called the Findlay Police Department at 4:48 a.m. and reported that a man with a black t-shirt, jeans, a stocky build and long wavy hair had been in her home at 922 West Main Cross and had subsequently left through her backyard.
Officer Hill of the Findlay Police Department answered the call and upon arriving at the scene, walked down the alley located behind Ms. Wilson's home. While in the alley, Officer Hill noticed a man fitting the description of the alleged perpetrator with his hands on the window sill of the home of David Wilson (no relation to Katherine Wilson) located at 916 West Main Cross. The man was facing the window and moving his hands back and forth across his body. When it looked as if the man was going to jump through the window, Officer Hill drew his weapon and told the man to stop what he was doing. The screen was torn free along the bottom of the window, and the molding was hanging from the side of the window. The man was identified as Wright.
At approximately 5:00 a.m., Wright was placed in a patrol car and transported to Katherine Wilson's home. Officer Hill entered Ms. Wilson's residence, asked her to describe the perpetrator and requested that she look at someone for a possible identification. Wright sat alone in the backseat of the patrol car with flashlights illuminating his face as Ms. Wilson viewed him from her porch. Ms. Wilson stated that Wright had the same clothes, build and hair as the man in her backyard and that Wright was the same man that was at her home. After Ms. Wilson made the identification, Wright was taken into custody and was subsequently indicted on two counts of burglary and one count of possession of criminal tools.
Wright filed a motion to suppress Ms. Wilson's identification of Wright at the scene, which was denied on January 22, 2001, and the case went to trial. At trial, Ms. Wilson testified that she saw a man walking off of her deck and out of the backyard and that he had long wavy hair and was wearing jeans and a black t-shirt. She also testified that the man on her deck was the man she viewed in the police car that night and then identified Wright in court as the same man she saw in the car and on her deck. Additionally, she stated that when she observed the man at the scene, she identified him by his face and not by his clothes. Officer Hill testified that he received a call from dispatch describing the man as having blue jeans, a black shirt, long wavy hair and stocky build. He testified that Wright matched that description on the night of his arrest and that upon speaking with Ms. Wilson prior to the identification, she gave him the same description that was given by dispatch.
After all evidence was presented, the jury was given instructions by the court to follow during its deliberations. The jury was instructed that "trespass" as used in the burglary statute, "means any entry knowingly made in a residence of another that is unlawful if it is without authority, consent, or privilege to do so." Additionally, the court gave a state-requested instruction over the objection of Wright which stated that "the insertion of any part of the body is sufficient to constitute entrance." On February 1, 2001, the jury found the defendant guilty on all counts. On February 22, 2001, Wright was sentenced to fourteen years and eleven months in prison.
Wright now appeals the judgment and sentence asserting two assignments of error.
The first assignment of error states:
 The trial court committed prejudicial error in not ordering the suppression of the witness Katherine Wilson's identification resulting from a suggestive and unreliable show-up pretrial identification procedure in contravention of the defendant's right to due process [and] a fair trial.
In reviewing a motion to suppress, the trial court is in the best position to resolve questions of fact and evaluate witness credibility as it assumes the role of trier of fact. State v. Mills (1992),62 Ohio St.3d 357, 366, citing State v. Fanning (1982), 1 Ohio St.3d 19,20. The appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v.Williams (1993), 86 Ohio App.3d 37, 41, overruled on other grounds as sated in Village of McComb v. Andrews (Mar. 22, 2000), Hancock App. No. 5-99-41, unreported. see also State v. Madden (Feb. 20, 2001), Union App. No. 14-2000-32, unreported. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. State v. Williams, 86 Ohio App.3d at 41.
In evaluating the suggestiveness and reliability of a show-up identification, the court must keep in mind that "the primary evil to be avoided is `a very substantial likelihood of irreparable misidentification.'" Neil v. Biggers (1972), 409 U.S. 188, 198, citingSimmons v. U.S. (1968), 390 U.S. 377, 384. While the practice of showing suspects alone to persons for the purpose of identification, and not as a part of line up, has been widely condemned, State v. Broom
(1988), 40 Ohio St.3d 277, 284, citing Stovall v. Denno (1967),388 U.S. 293, 302, an identification of this nature will be suppressed as violating due process only if the circumstances surrounding the identification are unnecessarily suggestive and unreliable after evaluating the totality of the circumstances. Manson v. Braithwaite
(1977), 432 U.S. 98, 112-113; State v. Broom, 40 Ohio St.3d at 284; Statev. Millisor (Aug. 4, 1999), Marion App. No. 9-98-69, unreported.
Thus the reliability of the witness identification is the "linchpin in determining the admissibility of identification testimony * * *." Mansonv. Braithwaite, 432 U.S. at 114. However, we are mindful that "[j]uries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." Mansonv. Braithwaite, 432 U.S. at 116.
In examining reliability, the court must consider 1) the opportunity of the witness to view the criminal at the time of the crime, 2) the witness' degree of attention, 3) the accuracy of the witness' prior description of the criminal, 4) the level of certainty demonstrated by the witness at the confrontation, and 5) the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. at 199-200.
In this case, the record reflects that Ms. Wilson had ample opportunity to observe the defendant as she watched him walk off her deck and through her lighted backyard for approximately 30 seconds. The record also reflects that Ms. Wilson was attentive as she stated that she never took her eyes off the defendant. Ms. Wilson also gave several consistent descriptions of the perpetrator including the descriptions given to the 911 dispatcher, to Officer Hill at the scene, and in court, all of which matched Wright's appearance at the time of the show-up identification. Finally, the record reflects that the time between the crime and Ms. Wilson's identification of the defendant in the patrol car was a mere fifteen minutes.
This court recognizes the potential suggestiveness of a show-up procedure in which a single suspect is viewed in the backseat of a police cruiser. State v. Millisor (Aug. 4 1999), Marion App. No. 9-98-69, unreported. However, after reviewing the foregoing factors, we find there is competent credible evidence that the identification was sufficiently reliable under the totality of the circumstances in this case. Accordingly, defendant's first assignment of error is overruled. Appellant's second assignment of error states:
 The trial court committed prejudicial error when it included in its charge to the jury an expanded definition of trespass by adding the phrase "In addition, the insertion of any part of the body is sufficient to constitute entrance."
In reviewing the sufficiency of jury instructions given by a trial court, an appellate court must not disturb the trial court's instructions unless the record demonstrates an abuse of discretion as it is within the sound discretion of the trial court to instruct the jury. State v.Dailey (May 9, 2000), Hancock App. No. 5-99-56, unreported. An abuse of discretion occurs when the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1993), 5 Ohio St.3d 217 . Additionally, requested instructions should be given if they are correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction. Murphy v.Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591; see also State v.Joy (1995), 74 Ohio St.3d 178, 181 (requested instructions in a criminal case must be given when they are correct, pertinent and timely presented.).
This court has previously held that "evidence of the insertion of any part of the body into an occupied dwelling is sufficient to constitute a trespass for the purpose of establishing a burglary offense." State v.Burns (March 15, 1999), Marion App. No. 9-98-21, unreported, citing Statev. Smith (Nov. 15, 1994), Franklin App. No. 94APA04-502, unreported. In this case, the trial court gave the jury an instruction that stated that "the insertion of any part of the body is sufficient to constitute entrance." This instruction was clearly a correct statement of law.
Moreover, in this case, Officer Hill testified that he saw Wright with his hands up against the window of Mr. Wilson's home and could see him move his arms across his body. He also testified that there was a sufficient size opening in the screen for a person to fit through and that it appeared that Wright was going to jump in the window. Additionally, Mr. Wilson testified that the screen was not ripped when he left for work that evening but was torn when he returned home. Photographs of the screen were also entered into evidence that show a rip in the screen and torn molding on the window. In short, the evidence was such that reasonable minds could reach the conclusion that the defendant inserted a part of his body through the window. For all of the foregoing reasons, the use of this jury instruction cannot be said to be an abuse of discretion. The defendant's second assignment of error is without merit and the judgment of the Hancock County Court of Common Pleas is affirmed.
WALTERS, P.J. and HADLEY, J., concur.