OPINION
Robert J. Dean, Jr. ("Appellant") appeals his jury conviction in East Liverpool Municipal Court on one count of violating a protection order. For the following reasons, the conviction is affirmed.
On September 22, 1999, the Columbiana County Court of Common Pleas, Domestic Relations Division, entered a "Consent Agreement and Domestic Violence Protection Order" ("CPO") which prohibited Appellant from abusing his wife, Mary, and three minor children and from coming within 100 yards of them. The CPO did grant Appellant temporary visitation rights with the children, but it ordered Appellant to pick up the children in Mary's driveway and to remain in his car while Mary's parents delivered the children to his car.
On October 1, 1999, Mary filed for divorce. The Columbiana County Court of Common Pleas, Domestic Relations Division, issued a temporary order granting Appellant standard visitation rights with his children pursuant to Columbiana County Loc.R. 9.4. The order did not state that it was terminating or nullifying the prior CPO. The order stated that both Appellant and Mary were, ". . . restrained from annoying or harassing the other, either directly or indirectly * * *." (10/1/99 Temporary Order, p. 1).
At trial, the facts of the case were contested. Both parties agreed that on March 13, 2000, Appellant's son was hospitalized at East Liverpool City Hospital. (Tr., 113-114). Appellant called Mary at the hospital and asked if he could visit his son there, to which Mary reluctantly agreed. (Tr., 137). Mary was accompanied at the hospital by her friend, James LaCaze. Appellant arrived at the hospital while Mary and Mr. LaCaze were still there. From there, the parties' stories differ. The state's version is that during the visit, Appellant threatened to cut Mary's throat and kill her. (Tr., 141). He also threatened to assault Mr. LaCaze. (Tr., 140). The record indicates that Appellant's divorce had not yet been finalized at the time of this incident.
Mr. LaCaze notified hospital security of Appellant's threats and supplied the director of security, Mr. Larry McConnell, with a copy of the CPO. Mr. McConnell asked Appellant to leave, but agreed to give Appellant a few minutes to say goodbye to his son. (Tr., 114-115). After twenty minutes, Mr. McConnell asked Appellant again to leave, and Appellant refused. (Tr., 115). The East Liverpool City Police Department was called and three officers responded. Patrolman Marty Ward and Patrolman Fred Flati both noted that Appellant appeared to be intoxicated. (Tr., 161, 166). The officers confirmed that a CPO was in effect. (Tr., 167). The officers tried to talk to Appellant and walk him out of the hospital, but he refused. (Tr., 162). The officers eventually arrested him for violating the CPO. (Tr., 164).
Appellant was charged with one count of domestic violence in violation of R.C. § 2919.25(C), a first degree misdemeanor, and one count of violating a protection order in violation of R.C. § 2919.27(A)(1), a first degree misdemeanor. The case came to jury trial on June 20, 2000. The jury convicted Appellant on the charge of violating a protection order and acquitted him of the domestic violence charge. The court sentenced Appellant to sixty days in jail, a $500 fine, and court costs. Appellant filed this timely appeal on June 22, 2000. The trial court granted a stay of execution of sentence during the pendency of this appeal.
Appellant presents six assignments of error for review. Appellant's first five assignments all deal with the same few lines of the trial transcript in which Appellant's counsel requested an instruction from the trial court. As the alleged errors are all interrelated, they will treated together for purposes of our analysis:
 "THE DEFENDANT WAS DENIED HIS DUE PROCESS RIGHTS TO A FAIR TRIAL AND WAS PREJUDICED THEREBY.
 "THE LOWER COURT ERRED BY NOT GIVING THE PROPER JURY INSTRUCTIONS EVEN THOUGH PROPERLY REQUESTED AND RELEVANT.
 "THE TRIAL COURT ERRED BY ALLOWING THE POLICE OFFICER TO TESTIFY AS TO HIS OPINIONS OF THE LAW IN THE CASE.
 "THE LOWER COURT ERRED BY STATING ITS OPINION OF THE CASE TO THE JURORS.
 "THE ABOVE ERRORS, WHEN TAKEN TOGETHER, DEPRIVED THE DEFENDANT, ROBERT DEAN, OF A FAIR TRIAL AS GUARANTEED UNDER THE OHIO AND UNITED STATES CONSTITUTIONS' DUE PROCESS CLAUSES."
Appellant's assignments of error all involve the following excerpt from the trial transcript in which Appellant's attorney is cross-examining Patrolman Flati:
 "Q. Okay. And I think you stated that you arrested him for the violating of the protection order before you heard anything about the domestic violence, the actual threats?
"A. Correct.
 "Q. Okay. And so, you didn't learn about that until afterwards — after he —
"A. — minutes afterward.
"Q. Right.
 "A. Regardless if she would, uh, if she would have invited him there or not, there is still an order issued by the judge in effect, and he's not permitted to be there, no matter who gives him permission. You know —
"Q. — that's your opinion; right?
"A. It's not my opinion, no. It's law.
 "MR. TAYLOR: Your Honor, I'd like an instruction that you tell — that you decide what the law is in this case.
"THE COURT: Your objection is overruled.
 "MR. McNICOL [the prosecutor]: He's answering the question.
 "THE COURT: That is the law of the CPO and it's right on the front, a warning to all defendants. That is the law."
 "Q. (By Attorney Taylor) So, it's your testimony that just being physically present there is a violation of the protection order?
 "A. If that's what's stated in the protection order, which in fact this was, yes.
"Q. Okay. That's your understanding of this case?
"A. What was you question?
"Q. That's your understanding of this case?
"A. Rephrase the question.
 "Q. Your understanding of this case is that just by being there he violated the protection order?
"A. Correct.
"Q. Just by going to see his child at the hospital?
 "A. By being in her presence, being that there was a protection order in effect, yes.
"Q. Okay.
"A. He was in violation of that protection order.
 "Q. Okay. Since he is allowed visitation with the child, how is he supposed to interact in the visitation with his child —
 "A. — well, arrangements are going to have to be made —
"MR. McNICOL: — objection, Your Honor.
 "THE COURT: Objection overruled. The officer was able to answer the question. If he's able to answer that.
 "A. (By the witness.) There is going to have to be arrangements made. There are certain times throughout the week that there's people that actually bring their children, drop them off at the police department downstairs, right in front of our presence in front of the dispatcher's presence, and then leave and another person comes in, the other parent. I mean, there's ways around it.
 "Q. Okay. So, that's what you think is appropriate within those circumstances?
"A. He's not allowed to be around her.
"Q. Okay.
"A. According to the Judge's order." (Tr., 171-172).
Appellant's second assignment of error asserts that the trial court failed to give the jury any instruction as to what type of conduct violates a civil protection order. It is axiomatic that a trial judge, "must give all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the factfinder." Statev. Joy (1995), 74 Ohio St.3d 178, 181, 657 N.E.2d 503. The record contradicts Appellant's asserted error, as the trial court clearly instructed the jury both in its preliminary instructions and its final instructions as to the elements of the crime of violating a protection order: "that the Defendant, Mr. Dean, recklessly violated the terms of the consent agreement." (Tr., 255-256; see also Tr., 78). Furthermore, in its closing instructions to the jury the court explained to the jury what conduct constituted a violation of the CPO:
 "That is violating a protection order. Did the actions of the Defendant harm, attempt to harm, threaten, molest, follow, stalk, bother, harass, annoy, contact or force sexual relations upon Mary J. Dean; any one of those above.
 "If you find beyond a reasonable doubt that that is true, then you will find the Defendant guilty of [violation of the protection order]." (Tr., 257; 9/22/99 Consent Agreement, p. 1).
Appellant's third assignment of error takes issue with Patrolman Flati's opinions about the applicable law in this case. Appellant contends that a witness may not testify about the laws which may or may not apply to the case at hand. Generally, it is the duty of the trial judge to, "state clearly and concisely the principles of law necessary to enable the jury to accomplish the purpose desired." Cleveland Elec.Illum. Co. v. Astorhurst Land Co. (1985), 18 Ohio St.3d 268, 272, 18 OBR 322, 480 N.E.2d 794.
During Patrolman Flati's testimony, Appellant's counsel requested that the court give an instruction, "that you [the court] decide what the law is in this case." (Tr., 171). The court interpreted counsel's request as an objection, and overruled the objection. The court had previously given the jury an appropriate instruction concerning a trial judge's duty to explain the applicable law: "I will give you all the instructions of law that are necessary for you to make a decision on this case. You don't have to be concerned about any knowledge of law, we presume that you do not have that, you're not expected to, and I will provide you with it. That is my job." (Tr., 71). Therefore, since the court had already complied with counsel's request, the court was justified in overruling the objection.
Furthermore, Patrolman Flati's comments about the specific prohibitions in the CPO were an attempt to clarify a misconception about why Appellant was arrested, rather than an attempt to expound upon the law. Witnesses are given wide latitude to explain and correct their answers:
 "A witness always has the right to modify a statement when truth or accuracy so requires. A witness who has given an erroneous impression with respect to the facts should be allowed to make the required correction or explanation. A witness should also be permitted to explain facts in evidence from which a wrong inference or conclusion is likely to be drawn without an explanation. Where there are discrepancies in the testimony or statements of a witness, it is proper to permit an explanation, and it is for the trial judge, in the exercise of judicial discretion, to determine whether a witness may be permitted to explain or correct testimony previously given." 98 Corpus Juris Secundum (2002) 366, Witnesses, Section 393.
Patrolman Flati was attempting to clarify two facts which were in evidence. The first fact was the CPO itself, including its specific orders. The CPO and its terms were facts required to be proven by Appellee as part of the essential elements of the charge of violation of a protection order, which elements are: 1) recklessly; 2) violating the terms; 3) of a protection order. R.C. 2919.27(A)(1). The second fact being corrected by Patrolman Flati was Appellant's actual arrest. Appellant's line of questioning could easily have led to an inference that the CPO only prohibited Appellant from physically or verbally abusing Mary, that the officers had no knowledge of any abuse prior to arresting him, and thus, that Appellant was falsely arrested. Patrolman Flati attempted to explain that he read the CPO as containing a "no contact" order, and that it was the "no contact" order which led to the arrest. The trial court was well within its discretion to allow Patrolman Flati to correct the misconception about why Appellant was arrested.
Additionally, under the invited error doctrine, Appellant waived any alleged errors concerning Patrolman Flati's comments about the CPO. The invited error doctrine holds that a party may not take advantage of an error which he or she created or induced. State v. Seiber (1990),56 Ohio St.3d 4, 17, 564 N.E.2d 408. Appellant's counsel, on cross-examination, opened the door to Patrolman Flati's comments by asking him about the reasons behind the arrest. (Tr., 171). Appellant cannot now claim error based on Patrolman Flati's explanation as to why he arrested Appellant.
Finally, it is difficult to see how Appellant could have been prejudiced by Patrolman Flati's initial comments about the CPO when Appellant's counsel immediately proceeded to ask five more questions on the same topic. An appellant must demonstrate that there is a reasonable probability that, absent the alleged errors, the outcome of the trial would have been different. State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraph three of the syllabus. Counsel's questions induced the patrolman to repeat his opinion about the CPO five more times, and yet counsel did not object to any of these answers. (Tr., 172-173). Therefore, Appellant cannot show that Patrolman Flati's initial comments about the CPO made any difference to the outcome of the case.
Appellant's fourth assignment of error contends that the trial judge expressed an opinion to the jury which implied that Appellant was guilty. "In a trial before a jury, the court's participation by questioning or comment must be scrupulously limited, lest the court, consciously or unconsciously, indicate to the jury its opinion on the evidence or on the credibility of a witness." State ex rel. Wise v.Chand (1970), 21 Ohio St.2d 113, 256 N.E.2d 613, paragraph three of the syllabus.
The record does not support Appellant's assertion. The trial court stated: "[t]hat is the law of the CPO and it's right on the front, a warning to all defendants. That is the law." (Tr., 172). The court was referring back to the statement made by Patrolman Flati that the CPO prohibited Appellant from being in the presence of Mary, even if Mary herself gave him permission to be in her presence. (Tr., 171). The court was not making a statement about Appellant's guilt or innocence, but rather, was explaining that the prohibitions contained in the CPO were part of the relevant law to be used in deciding the case. As previously noted, it is the province of the trial court to explain the relevant law to the jury. Cleveland Elec. Illum. Co., 18 Ohio St.3d at 272. While the matter was inartfully handled by both the officer and the court, the record does not reflect that the trial court made any comments about Appellant's guilt or innocence, and therefore, Appellant's third assignment of error is baseless.
Appellant's first and fifth assignments of error allege that he was denied a right to a fair trial due to the cumulative errors made by the trial court. As we have found no error on the part of the trial court, Appellant cannot succeed in arguing that there has been cumulative error. See State v. Davis, (1991) 62 Ohio St.3d 326, 348, 581 N.E.2d 1362. Appellant's assignments of error numbers one through five are hereby overruled.
Appellant's sixth and final assignment of error alleges:
 "THE CONVICTION OF THE DEFENDANT, ROBERT DEAN, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant argues that the October 1, 1999, temporary order of the domestic relations court superceded the September 22, 1999, CPO. Appellant argues that he could not have been convicted for being in the presence of Mary and his children because there was no longer an order prohibiting him from being in their presence. Appellant also points to his acquittal on the domestic violence charge as evidence that he did not violate that part of the CPO which prohibited him from abusing Mary by harming, attempting to harm or threatening Mary. Appellant's arguments are not persuasive.
"Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" State v. Thompkins (1997), 78 Ohio St.3d 380,387, 678 N.E.2d 541, quoting Black's Law Dictionary (6 Ed. 1990) 1594. When reviewing a trial court decision as against the manifest weight of the evidence, a court of appeals acts as a "thirteenth juror," especially when it reviews the trial court's resolution of conflicts in testimony.Id., citing Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211,72 L.Ed.2d 652.
"`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, supra, at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.
Appellant is correct that the October 1, 1999, temporary order superceded, at least in part, the September 22, 1999, CPO. Nevertheless, both the CPO and the October 1, 1999, temporary order prohibited Appellant from harassing Mary. The act for which Appellant was ultimately convicted was that of harassing and threatening Mary. There is substantial evidence in the record that these threats took place, including testimony from Ms. Georgia Smith, a stranger to the parties who happened to be in the same hospital room on March 23, 2000. (Tr., 96-100). Therefore, regardless of whether the "no contact" portion of the CPO was still in effect, the evidence showed that Appellant violated both the CPO and the October 1, 1999, temporary order by threatening and harassing Mary Dean. The fact that the jury convicted Appellant only of violating a CPO and not of committing domestic violence is irrelevant. The two crimes have different elements and the jury was apparently not convinced that all the elements of R.C. 2919.25(C) were satisfied. Appellant's sixth assignment of error is overruled.
Since we must overrule all of Appellant's assignments of error, we hereby affirm the jury verdict and sentence in full.
Vukovich, P.J., and DeGenaro, J., concur.