OPINION
{¶ 1} Defendant-appellant, Robin M. Garrison, appeals the judgment of the Franklin County Municipal Court, which the trial court convicted appellant of public indecency pursuant to a jury trial. *Page 2 
 {¶ 2} Plaintiff-appellee, the City of Columbus, charged appellant with public indecency, in violation of Section 2307.09(A)(1) of the Columbus City Code. The complaint against appellant alleged that, on May 30, 2007, appellant:
 RECKLESSLY EXPOSE[D] HIS PRIVATE PARTS * * * UNDER CIRCUMSTANCES IN WHICH HIS CONDUCT WAS LIKELY TO BE VIEWED BY AND AFFRONT OTHERS, NOT MEMBERS OF HIS HOUSEHOLD, TO WIT: PULLED OUT HIS ERECT PENIS WHILE S[I]TTING IN THE GRASS * * * OF BERLINER PARK * * *.
 {¶ 3} Appellant pleaded not guilty, and a jury trial ensued. At trial, appellee called Columbus Police Detective Dick Elias to testify. Detective Elias testified that, on May 30, 2007, he and other police officers, including Sergeant Stan Latta, went to Berliner Park to investigate complaints about individuals soliciting sex or masturbating in public. (Tr. 40.) At the park, the police officers noticed a woman, later known to be Karla Snedeker, sunbathing with her breasts exposed. Snedeker had been coming to the park for a week. Detective Elias did not personally know Snedeker. Although Snedeker was not violating pertinent public indecency statutes by exposing her breasts in public (seeState v. Jetter [1991], 74 Ohio App.3d 535, 536), Detective Elias asked Snedeker to move to a more remote location of the park because there were people in cars disrupting the flow of traffic to look at her. Snedeker complied.
 {¶ 4} Meanwhile, Detective Elias noticed appellant when Detective Elias was finishing a summons issued to an individual who had exposed himself to Snedeker. Appellant parked his vehicle and sat next to Snedeker. The detective recalled that appellant had previously interacted with Snedeker, and he watched appellant and Snedeker through binoculars. *Page 3 
 {¶ 5} Snedeker spread her legs, "had her legs up * * * directly in front of" appellant and, at one point, Snedeker tapped appellant's shoulders with her legs. (Tr. 43.) Appellant had his hands between his legs, but Detective Elias did not see appellant expose himself.
 {¶ 6} Other police officers were also watching appellant and Snedeker, including Sergeant Latta. Sergeant Latta saw appellant expose himself to Snedeker. Sergeant Latta testified that, on May 30, 2007, he and other police officers were investigating Berliner Park for illicit activity, including individuals exposing themselves. The police had a video camera in one of their vehicles to record illicit activity, and the video recorded appellant's activity in front of Snedeker.
 {¶ 7} Sergeant Latta saw appellant park his vehicle and, ultimately, sit next to Snedeker. Sergeant Latta could not hear the conversation between the two. After several minutes, appellant unzipped his pants and exposed his erect penis. At that point, Sergeant Latta approached appellant and issued him a summons for public indecency.
 {¶ 8} On cross-examination, Sergeant Latta testified that he was aware that Snedeker had been in Berliner Park on more than one day. Sergeant Latta also testified that appellant was not the only person to have been arrested for illicit conduct after coming in contact with Snedeker.
 {¶ 9} Thereafter, appellee rested its case, and appellant testified on his own behalf. Appellant often drove through Berliner Park to reach a landfill to dispose of garbage from his garbage hauling business. One day in May 2007, appellant was driving through Berliner Park to go to the landfill, and, while driving through the park, he *Page 4 
noticed Snedeker, who was topless. Appellant asked Snedeker if she was allowed to be topless in public, and Snedeker affirmed. Appellant responded, "`Ma'am, you know, you made my day. You made my whole week.'" (Tr. 73.) Snedeker responded that she would be at the park "`every day.'" (Tr. 73.)
 {¶ 10} The next day, appellant again drove through Berliner Park several times to dump garbage in the nearby landfill. Appellant would see Snedeker each time he drove through the park, and, each time, Snedeker, who was topless, would wave to appellant. Snedeker was flirtatious and, one time, grabbed her breasts. In the middle of one of appellant's drives through Berliner Park, Snedeker "waved [appellant] over," and appellant approached her. (Tr. 76.) Snedeker was flirting with appellant and asked for some water. Appellant agreed to get Snedeker water as he continued his dumping jobs. Appellant obtained the water at a gas station and drove back to Berliner Park to give it to Snedeker. Appellant left to continue his dumping, and Snedeker asked appellant to return later.
 {¶ 11} Thereafter, after another trip to the landfill, appellant drove through Berliner Park and again saw Snedeker. Appellant drove near Snedeker, who was again topless, and Snedeker asked appellant to visit her. Appellant complied and sat with Snedeker. Snedeker flirted with appellant. Snedeker asked appellant to pour water over her hair, and appellant complied. Snedeker put her legs on appellant's shoulder and, at one point, spread her legs, exposing that she was not wearing anything under her shorts. Appellant asked Snedeker to "`[s]how me more of that,'" and Snedeker asked appellant to expose his penis. (Tr. 84.) Appellant then exposed himself. *Page 5 
 {¶ 12} Appellant further testified that, when he arrived at Berliner Park that day, he did not plan on exposing himself to Snedeker. Rather, appellant testified that he exposed himself because Snedeker made the request.
 {¶ 13} After appellant rested his case, appellant's counsel asked the judge to provide a jury instruction on the defense of entrapment. Appellant's counsel also submitted the proposed instruction in writing:
 1. The defendant denies that he intended, or formed a purpose, to commit an offense. He claims that he is excused because he was entrapped by the police.
 2. DEFINED. Entrapment occurs when a police officer plants in the mind of the defendant the original idea or purpose, thus furnishing from the start the incentive (moving force) to commit an offense that the defendant had not considered and which he would not have carried out except for that incentive (moving force). If the defendant did not himself conceive of committing the offense, and if it was suggested to him by the officer for the purpose of causing his arrest and prosecution, the defendant must be found not guilty. Briefly, the whole criminal idea and purpose originates with the police, not with the defendant.
 * * *
 4. ENTRAPMENT — AFFIRMATIVE DEFENSE. Entrapment is an affirmative defense and the defendant has the burden to prove entrapment by a preponderance of the evidence. The defense of entrapment is established where the criminal (design) (plan) (idea) originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute.
Likewise, the proposed written jury instructions included a notation indicating that "[i]t is error to refuse to define `police officers' to include unpaid agents and informants when the evidence raises the issue and the court is specifically requested to do so." (Emphasis omitted.) *Page 6 
 {¶ 14} Appellee objected to the instruction, claiming that the evidence did not demonstrate that Snedeker's "conduct was connected with the Government." (Tr. 110.) The trial court declined the instruction.
 {¶ 15} Ultimately, the jury found appellant guilty of public indecency, and the trial court sentenced appellant accordingly. Appellant appeals, raising one assignment of error:
 The trial court abused its discretion by refusing to instruct the jury on the defense of entrapment, thereby depriving Appellant of due process of the law as guaranteed by the United States and Ohio Constitutions.
 {¶ 16} In his single assignment of error, appellant contends that the trial court erred by not instructing the jury on the defense of entrapment. We disagree.
 {¶ 17} "The court must give all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the factfinder." State v. Joy, 74 Ohio St.3d 178, 181, 1995-Ohio-259, citing State v. Comen (1990), 50 Ohio St.3d 206, paragraph two of the syllabus. Conversely, "[i]t is well established that the trial court will not instruct the jury where there is no evidence to support an issue." Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591, citing Riley v. Cincinnati (1976), 46 Ohio St.2d 287; State v.Rahe, Franklin App. No. 06AP-997, 2007-Ohio-5864, ¶ 17.
 {¶ 18} Here, appellant requested a defense of entrapment jury instruction. The defense of entrapment is established "where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute."State v. Doran (1983), 5 Ohio St.3d 187, paragraph one of the syllabus. *Page 7 
Entrapment is an affirmative defense, and the defendant must prove entrapment by a preponderance of the evidence. Id. at 193-194.
 {¶ 19} In United States v. McLernon (C.A.6, 1984), 746 F.2d 1098,1109, the appellate court held that the entrapment defense encompasses inducements initiated by either government officials or private citizens acting as government agents upon the government officials' instructions or directions. Id. at 1109. Relying on McLernon, appellant argues that the Columbus Police Department used Snedeker to induce his public indecency.
 {¶ 20} An agency relationship is created when a principal has the right to control the actions of an agent, and when the agent's actions are in furtherance of the principal's objectives. Hanson v. Kynast
(1986), 24 Ohio St.3d 171, 173. Here, the record does not show that Snedeker acted as a police agent or acted under the police's instructions or directions. In particular, Sergeant Latta and Detective Elias did not know Snedeker, and the record is devoid of evidence that the police urged, directed or requested that Snedeker entice men, including appellant, to expose themselves.
 {¶ 21} In this regard, contrary to appellant's assertions, Snedeker did not become an agent of the police when the police asked Snedeker to move to an area where they ultimately established recorded surveillance. This evidence merely portrays the police as watching to see if men, including appellant, would expose themselves to Snedeker, and it is the legitimate function of the police to detect crime. United States v.Worthington (C.A.5, 1977), 544 F.2d 1275, 1279.
 {¶ 22} Likewise, it is irrelevant to appellant's entrapment defense that the police chose not to arrest or charge Snedeker for enticing men to expose themselves, but *Page 8 
continued to allow Snedeker to meet with men and have men expose themselves to her. Without evidence of the police urging, directing or requesting Snedeker to entice men to expose themselves, the record does not establish that Snedeker induced the public exposure as an agent of the police or under the police's instructions or directions.
 {¶ 23} In this regard, we find misplaced appellant's reliance onUnited States v. Klosterman (C.A.3, 1957), 248 F.2d 191, and UnitedStates ex rel. Hassell v. Mathues (E.D.Pa. 1927), 22 F.2d 979. In these cases, the courts deemed government agents for entrapment purposes individuals who solicited bribes from defendants at government employees' requests. See Klosterman at 195-196; Mathues at 979-980. Conversely, appellant's case is akin to State v. Cates (Nov. 21, 2000), Franklin App. No. 00AP-73, where a defendant was convicted for illegally selling drugs to an undercover police officer at the urging of appellant's former roommate. We rejected the defendant's entrapment defense, recognizing, in pertinent part, that the defendant's former roommate instigated a drug transaction between the defendant and the undercover officer, and acknowledging that the former roommate was not working for the police and did not even know the undercover officer's association as a police officer. Here, like Cates and unlikeKlosterman and Mathues, the evidence does not support appellant's entrapment defense because Snedeker was not acting at the police's request. Thus, we conclude that appellant was not entitled to a jury instruction on the defense of entrapment.
 {¶ 24} Accordingly, the trial court did not err by refusing to provide a jury instruction on the defense of entrapment. We overrule appellant's single assignment of error, and we affirm the judgment of the Franklin County Municipal Court. *Page 9 
 Judgment affirmed. BRYANT and TYACK, JJ., concur. *Page 1