OPINION.
{¶ 1} This is an appeal of a jury verdict in which Appellant, Jamal Shakoor, was convicted of murder. Appellant asserts nine assignments of error on appeal, none of which demonstrate reversible error. The judgment of the trial court is affirmed.
 {¶ 2} On January 16, 2000, Tori Griffin stopped at the home of Ben Reeves to get help with her stalled car. (Tr., p. 57.) She and Mr. Reeves had been dating for about one year. (Tr., p. 63.) Ms. Griffin had left her car near Ursuline High School in Youngstown, Ohio. (Tr., p. 60.)
 {¶ 3} As Ms. Griffin and Mr. Reeves drove to Ursuline High School to examine the car, they noticed Appellant following them. (Tr., pp. 66-67.) Appellant previously dated Ms. Griffin. (Tr., p. 66.) Appellant pulled his car behind them. (Tr., p. 66.) He approached them and asked about the relationship between Ms. Griffin and Mr. Reeves. At this point, Ms. Griffin asked Appellant to leave. (Tr., p. 68.) Appellant and Mr. Reeves spoke to each other. (Tr., p. 72.) Ms. Griffin told them she wanted to leave. As she turned to go, she saw Appellant shoot Mr. Reeves in the head. (Tr., p. 69.) Once the victim fell, Appellant stood over him and repeatedly shot the victim while he lay on the ground. (Tr., p. 70). Afterward, Appellant walked to his car and left. (Tr., p. 71.)
 {¶ 4} Ms. Griffin left the scene to get help, but later returned to identify the shooter. (Tr., p. 168.) The police searched Appellant's home and found the murder weapon, a 9mm handgun. (Tr., p. 177.) Appellant was subsequently arrested. Upon arrest, Appellant confessed he shot Mr. Reeves. (Tr., p. 246.) The police videotaped the confession.
 {¶ 5} The Mahoning County Grand Jury indicted Appellant on February 10, 2000, on one count of murder in violation of R.C. 2903.02(A), punishable by an indefinite prison term of fifteen years to life. The charge contained a firearm specification pursuant to R.C. 2941.145(A), which carries a three-year mandatory prison term.
 {¶ 6} During litigation of the case, trial was postponed a number of times. Appellant signed two waivers of his speedy trial rights prior to trial. Appellant himself requested numerous continuances.
 {¶ 7} The jury trial began on June 11, 2001. On June 14, 2001, the jury convicted Appellant of murder and of the firearm specification. On June 18, 2001, the court sentenced Appellant to an indefinite prison term of fifteen years to life on the murder charge, to be served consecutively to the three-year prison term for the firearm specification. Appellant now appeals the conviction and sentence.
 {¶ 8} Appellant's first assignment of error alleges:
 {¶ 9} "Defendant/Appellant was denied his right to a speedy trial"
 {¶ 10} Appellant argues that a delay of one and one-half years between arrest and trial is a violation of his Sixth Amendment right to a speedy trial. Appellant did not raise this issue in the trial court. A defendant cannot raise a speedy trial issue for the first time on appeal. Worthington v. Ogilby (1982), 8 Ohio App.3d 25, 8 OBR 26,455 N.E.2d 1022, paragraph two of the syllabus; State v. Goodwin (2001), 7th Dist. No. 99 CA 220. Furthermore, the record contains two express signed waivers of Appellant's speedy trial rights. The first waiver was for ninety days. Appellant subsequently signed an unlimited waiver of speedy trial rights. "Following an express, written waiver of unlimited duration by an accused of his right to speedy trial, the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection and demand for trial, following which the state must bring the accused to trial within a reasonable time." State v. O'Brien (1987), 34 Ohio St.3d 7, 516 N.E.2d 218, paragraph two of the syllabus.
 {¶ 11} After Appellant signed the unlimited waiver of speedy trial rights, he himself requested a number of continuances relating to a motion to suppress. The time between a motion to suppress and the hearing on the motion is excludable from speedy trial calculations. R.C.2945.72(E); State v. Bumbalough (1992), 81 Ohio App.3d 408, 410,611 N.E.2d 367.
 {¶ 12} On the eve of trial he also filed a motion to dismiss the indictment. A motion to dismiss also acts to toll the time in which a defendant must be brought to trial. R.C. 2945.72(E); State v.Bickerstaff (1984), 10 Ohio St.3d 62, 67, 461 N.E.2d 892.
 {¶ 13} For all these reasons, Appellant's first assignment of error is without merit.
 {¶ 14} Appellant's second assignment of error asserts:
 {¶ 15} "The trial court erred in its decision regarding the defendant/appellants [sic] motion to suppress his statement given to detectives in that said statement was the product of coercive police conduct in the totality of these circumstances."
 {¶ 16} In this assignment of error, Appellant challenges the trial court's ruling on his motion to suppress evidence. This Court has previously concluded that the standard of review of a trial court's ruling on a motion to suppress is limited to determining whether the trial court's findings are supported by competent, credible evidence. State v.Winand (1996), 116 Ohio App.3d 286, 288, 688 N.E.2d 9. This standard of review is appropriate because, "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of the trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer (1996), 112 Ohio App.3d 521,548, 679 N.E.2d 321. However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. State v. Williams (1993),86 Ohio App.3d 37, 41, 619 N.E.2d 1141.
 {¶ 17} Appellant argues that, despite the existence of a signed Miranda waiver in the record, an inculpatory confession he made to police was not voluntarily made and should have been suppressed. Appellant argues that the state must prove that a confession was voluntary even though the defendant has signed a written Miranda waiver, citing Statev. Edwards (1976), 49 Ohio St.2d 31, 358 N.E.2d 1051, judgment vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155. The issue, according to Appellant, was whether the confession was achieved through threats or promises of leniency. Appellant contends that a confession obtained through threats or promises of leniency is inadmissible, citing Rogers v. Richmond (1961), 365 U.S. 534,81 S.Ct. 735, 5 L.Ed.2d 760. The record does not support Appellant's argument.
 {¶ 18} A suspect's waiver of his right not to incriminate himself, and his subsequent confession, must be made voluntarily, knowingly, and intelligently. Miranda v. Arizona (1966), 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694.
 {¶ 19} The record contains a written waiver of Appellant's Miranda rights. "[E]vidence of a written waiver form signed by the accused is strong proof that the waiver is valid." State v. Eley (1996),77 Ohio St.3d 174, 178, 672 N.E.2d 640.
 {¶ 20} "A suspect's decision to waive his privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." State v. Otte (1996),74 Ohio St.3d 555, 562, 660 N.E.2d 711, citing Colorado v. Connelly
(1986), 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473.
 {¶ 21} "[C]oercive police activity is a necessary predicate to finding that a confession is not voluntary within the Fifth Amendment, on which Miranda was based." State v. Dailey (1990), 53 Ohio St.3d 88,559 N.E.2d 459; Connelly, supra.
 {¶ 22} In deciding whether the defendant's confession in this case was involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." Edwards, supra,49 Ohio St.2d 40-41, 3 O.O.3d 18, 358 N.E.2d 1051. (Emphasis in original.)
 {¶ 23} A police officer's suggestion of leniency is not enough to invalidate a confession, but is merely one factor which bears on whether the confession was voluntary. State v. Cooey (1989), 46 Ohio St.3d 20,544 N.E.2d 895. Admonitions to tell the truth made by police officers, considered neither threats nor promises, are permissible. State v. Wiles
(1991), 59 Ohio St.3d 71, 571 N.E.2d 97, certiorari denied (1992),506 U.S. 832, 113 S.Ct. 99, 121 L.Ed.2d 59. When a police officer promises that a defendant's cooperation will be considered in resolving the case, or that a confession will be helpful in reducing the charges, a resulting confession is not automatically invalidated. State v. Loza
(1994), 71 Ohio St.3d 61, 641 N.E.2d 1082, certiorari denied (1995),514 U.S. 1120, 115 S.Ct. 1983, 131 L.Ed.2d 871. In State v. Chase
(1978), 55 Ohio St.2d 237, 9 O.O.3d 180, 378 N.E.2d 1064, the Ohio Supreme Court determined that a confession was voluntary even though the police offered "help" to the accused if he confessed.
 {¶ 24} The record does not support Appellant's contention that the police officers induced a confession through threats and promises of leniency. Appellant believes that Detective Gerald Maietta's own testimony reveals such threats and promises, but Appellant is mistaken in this assertion. Detective Maietta testified at the suppression hearing that he did not threaten Appellant with more serious charges if Appellant did not cooperate. (5/2/01 Tr., p. 33.) Detective Maietta testified that he told Appellant that the charges were severe. (5/2/01 Tr., pp. 34-35.) When Appellant asked about the possibility of receiving the death penalty due to the severity of the charges, Detective Maietta testified that he did not believe he discussed the issue. (5/2/01, Tr. p. 41.)
 {¶ 25} Appellant points to the following cross-examination dialogue from the suppression hearing to attempt to prove that Detective Maietta threatened him:
 {¶ 26} "Q. [Appellant's counsel]: Did you ever hear of cops telling someone, you know, if you don't cooperate, you can get more serious charges here?
 {¶ 27} "A. [Detective Maietta]: I've heard of that, yeah.
 {¶ 28} "Q. You ever do that?
 {¶ 29} "A. Probably.
 {¶ 30} "Q. Did you do it in this case?
 {¶ 31} "A. No. It wasn't necessary." (5/2/01 Tr., pp. 32-33.)
 {¶ 32} Appellant's counsel engaged in this further dialogue a short time later:
 {¶ 33} "Q. So, I mean, judging from what Detective Morales said — and I would think that you guys told [Appellant] these charges can be a heck of a lot more severe?
 {¶ 34} "A. We explained that they were pretty serious charges, yes.
 {¶ 35} "Q. Did you say that on direct or did you say that before you listened to that again? Huh?
 {¶ 36} "A. What do you mean?
 {¶ 37} "Q. I asked you whether or not you — sometimes you heard of people saying in an effort to —
 {¶ 38} "A. Yes.
 {¶ 39} "Q. And you said it didn't happen in this case?
 {¶ 40} "A. No, I — I don't know that I said that, but if I did, I was obviously in error." (5/1/01 Tr., pp. 34-35.)
 {¶ 41} Appellant believes that Detective Maietta's reference to something, "obviously in error," refers to the error of threatening Appellant with more serious charges. That conclusion is not at all evident from the transcript. Appellant's interpretation of Detective Maietta's comments are by no means the only possible, or even the most likely, interpretation. Although the questioning is rather unclear, it appears that Detective Maietta's comments reveal that he did not remember saying during direct examination that he threatened Appellant with more serious charges, and that if he did testify on direct examination about threatening Appellant, such testimony was in error.
 {¶ 42} Even if Appellant is correct about the meaning of Detective Maietta's comments, the detective made numerous other statements in which he denied threatening Appellant with more serious charges. The trial court may have chosen to believe those other statements rather than the oblique inferences on which Appellant relies. "At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." State v. Mills (1992), 62 Ohio St.3d 357, 366,582 N.E.2d 972.
 {¶ 43} Appellant does not allege that the police officers promised any specific aid or leniency to induce a confession. Appellant has not shown clear evidence in the record that the police officers did anything more than explain the nature of the possible charges, which has been shown to be an acceptable police tactic. Under the authority cited above, Appellant has not shown that his will was overcome and, therefore, there was no Miranda violation.
 {¶ 44} Appellant's third assignment of error states:
 {¶ 45} "The trial court erred by denying defendant/appellant's motion to dismiss the indictment or, alternatively, to exclude evidence because of the state's failure to comply with the Ohio Rules of Criminal Procedure relative to discovery."
 {¶ 46} In this assignment of error, Appellant asserts that the state failed to disclose material evidence tending to exculpate him in the murder, thereby denying him his constitutional right to a fair trial. See Brady v. Maryland (1963), 373 U.S. 83, 87, 83 S.Ct. 1194,10 L.Ed.2d 215. Appellant points to the following testimony of Detective Maietta, elicited at the suppression hearing:
 {¶ 47} "He [Appellant] started — when — when we first talked to him, he told us that he had been somewhere else, that he wasn't there, he was, I think, watching wrestling." (5/2/01 Tr., p. 35.)
 {¶ 48} It was apparent at the suppression hearing that neither Appellant's counsel nor the prosecutor were aware that Appellant had initially denied being at the scene of the crime. Appellant's denial of involvement was never reduced to writing. (5/1/01 Tr., p. 44.) At the close of the suppression hearing, Appellant's counsel asked the court to impose a sanction on Appellee for withholding Appellant's exculpatory oral statement made to the police. (5/1/01 Tr., p. 96.) The sanction that the court imposed was to grant a continuance of the trial.
 {¶ 49} Appellant argues on appeal that the trial court should have imposed a harsher sanction, either dismissing the case or suppressing evidence. Appellant argues that a violation of the rules of discovery warrant such a sanction, citing Crim.R. 16(E)(3):
 {¶ 50} "(3) Failure to comply. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."
 {¶ 51} Appellant argues that a harsh sanction is required because of the magnitude of the violation. Appellant contends that the error was an obvious violation of Crim.R. 16(B)(1)(a) and (f), which state:
 {¶ 52} "(1) Information subject to disclosure.
 {¶ 53} "(a) Statement of defendant or co-defendant. Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:
 {¶ 54} "(i) Relevant written or recorded statements made by the defendant or co-defendant, or copies thereof;
 {¶ 55} "(ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer;
 {¶ 56} "(iii) Recorded testimony of the defendant or co-defendant before a grand jury.
 {¶ 57} "* * *
 {¶ 58} "(f) Disclosure of evidence favorable to defendant. Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment. The certification and the perpetuation provisions of subsection (B)(1)(e) apply to this subsection."
 {¶ 59} Appellant's exculpatory statement was not written or recorded in any way, so Crim.R. 16(B)(1)(a) does not apply. If there was a violation, it was of Crim.R. 16(B)(1)(f), failure to disclose evidence favorable to the defendant.
 {¶ 60} Appellant argues that Brady requires a prosecutor to disclose to the defendant any and all information favorable to the defendant that is material to guilt or punishment. This is a fair summary of the Brady requirement. Brady at 87, 83 S.Ct. 1194, 10 L.Ed.2d 215. Exculpatory evidence is deemed to be material only if:
 {¶ 61} "[T]here is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." State v. Johnston (1988),39 Ohio St.3d 48, 529 N.E.2d 898, paragraph five of the syllabus, following United States v. Bagley (1985), 473 U.S. 667, 105 S.Ct. 3375,87 L.Ed.2d 481.
 {¶ 62} The Ohio Supreme Court has held:
 {¶ 63} "Strictly speaking, Brady is not violated when disclosure occurs during trial, even when disclosure surprises the defendant with previously undisclosed evidence. State v. Wickline (1990),50 Ohio St.3d 114, 116, 552 N.E.2d 913, 917. In such a circumstance a trial court has authority, pursuant to Crim.R. 16(E)(3), to grant a continuance or make other orders that the court deems just to ensure that the recently disclosed information can be evaluated and used before the trial is concluded.
 {¶ 64} "It has, however, been held that the philosophical underpinnings of Brady support the conclusion that even disclosure of potentially exculpatory evidence during trial may constitute a due process violation if the late timing of the disclosure significantly impairs the fairness of the trial. Even where information may be exculpatory, `[n]o due process violation occurs as long as Brady material is disclosed to a defendant in time for its effective use at trial.' United States v. SmithGrading Paving, Inc. (C.A. 4, 1985), 760 F.2d 527, 532. See, also,United States v. Starusko (C.A. 3, 1984), 729 F.2d 256, 262; UnitedStates v. O'Keefe (C.A. 5, 1997), 128 F.3d 885, 898." State v. Iacona
(2001), 93 Ohio St.3d 83, 100, 752 N.E.2d 937.
 {¶ 65} A continuance is the appropriate remedy if a Brady
violation is uncovered prior to the close of trial, and failure to request a continuance will usually constitute a waiver of the error on appeal. Iacona at 101. Granting a continuance for a pretrial Brady
violation is consistent with the general rule that the trial court, "must impose the least severe sanction that is consistent with the purpose of the rules of discovery." Lakewood v. Papadelis (1987), 32 Ohio St.3d 1,511 N.E.2d 1138, paragraph two of the syllabus.
 {¶ 66} In the instant case, the trial court granted a continuance. Two days later, Appellant filed a motion to dismiss the indictment based on the newly discovered exculpatory evidence. The court denied the motion. Appellant did not request any further continuances related to the newly discovered exculpatory statement. Thus, the record reflects that Appellant received his remedy for the Brady violation and has waived the right to assert any further error concerning this matter.
 {¶ 67} Appellant's fourth assignment of error maintains that:
 {¶ 68} "The trial court erred by allowing the introduction into evidence of a photograph of the victim while alive and allowing into evidence numerous gruesome photographs of the victim's body at the crime scene and numerous autopsy photo [sic]."
 {¶ 69} Appellant argues that Appellee should not have been permitted to introduce into evidence numerous photographs of the victim taken at the crime scene and during the autopsy examination. Furthermore, Appellant insists that it was inappropriate for the state to introduce a photograph depicting the victim while he was alive. Appellant believes that the photographs were merely cumulative in their effect, and that their unfair prejudicial effect outweighed their probative value. Appellant concludes that they should have been excluded pursuant to Evid.R. 403 and State v. Maurer (1984), 15 Ohio St.3d 239, 473 N.E.2d 768.
 {¶ 70} Appellant's reliance on Maurer is unusual, because that case stands for the proposition that the trial court has broad discretion in allowing the introduction of photographs into evidence based on their probative and prejudicial value and in excluding them as being merely cumulative under Evid.R. 611(A). Id. at 264-265. Maurer found that the trial court did not abuse its discretion in allowing numerous gruesome pictures of the victim's body taken at the autopsy and at the funeral.Maurer held that, "the mere fact that a photograph is gruesome or horrendous is not sufficient to render it per se inadmissible." Id. at 265. Maurer held that photographs of the body taken at the crime scene and the morgue could be used by the state to prove essential elements of the crime, such as whether the killing was done with the requisite intent. Id. Photographs may also help corroborate the testimony of the state's witnesses. Id.; see also State v. Gross (2002), 97 Ohio St.3d 121,136, 776 N.E.2d 1061.
 {¶ 71} Appellant admits that he failed to object to the introduction of most of the photographs, but he urges this Court to sustain his assignment of error on the grounds of plain error. Plain error has been defined as, "an obvious error which is prejudicial to an accused, although neither objected to nor affirmatively waived, which, if allowed to stand, would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings." State v.Craft (1977), 52 Ohio App.2d 1, 6 O.O.3d 1, 367 N.E.2d 1221, paragraph one of the syllabus.
 {¶ 72} Appellant objects to four photographs of the victim depicting the crime scene. The photographs are very graphic, showing the victim's body in a pool of blood. The mere fact that a photograph is gruesome, though, is not sufficient to preclude admission. Mauer,15 Ohio St.3d at 264, 473 N.E.2d 768; Gross, 97 Ohio St.3d at 136, 776 N.E.2d 1061. The four photographs are the only evidence of the exact condition of the crime scene immediately after the crime occurred. Although the four photographs are somewhat redundant, they do tend to show the nature of the crime. The photographs corroborate the testimony of Ms. Griffin about how the victim was shot and the location of the body. Each photograph is taken from a different angle to give a different view of the crime. One of the photographs (Exhibit 33) shows the location where the shell casings were found. Based on these considerations, there is no plain error in admitting the crime scene photographs.
 {¶ 73} Appellant also objects to eight autopsy photographs. Appellant did not object to seven of these photographs. Autopsy photographs are generally admissible to help the jury appreciate the nature of the crimes, to illustrate the coroner's or other witnesses' testimony by portraying the wounds, to help prove the defendant's intent, and to show the lack of accident or mistake. Gross,97 Ohio St.3d at 136, 776 N.E.2d 1061. The photographs in this case illustrate the exact location, number and type of each bullet wound, including the entrance and exit wounds caused by the bullets. The Ohio Supreme Court has held that autopsy photographs may be admitted into evidence, "as an illustration of where a bullet enters the body and evidence of the resulting wound" and that such photographs are "probative of a purposeful killing." State v. Goodwin (1999), 84 Ohio St.3d 331, 342, 703 N.E.2d 1251.
 {¶ 74} The autopsy photograph designated as State's Exhibit 50 is the only photograph that elicited an objection from Appellant. The photograph illustrates a different angle of an exit wound under the victim's right arm. It also helps to illustrate the testimony of the coroner. We find no error in the trial court's decision to overrule the objection to this photograph.
 {¶ 75} Appellant also asserts error in the introduction of a photograph of two bullets retrieved during the autopsy. Appellant fails to explain why this particular photograph should have been excluded. In a criminal case involving a crime committed with a firearm, it is reasonable to think that the state would want to show that bullets were actually used to cause the injuries at issue.
 {¶ 76} Appellant further objects to one photograph that depicts the victim while he was alive. Appellee asserts that it is appropriate for the state to introduce photographs showing the victim while he was alive in order to establish that it was a living human being that was killed, citing this Court's recent opinion in State v. Goodwin (Sept. 24, 2001), 7th Dist. No. 99 CA 220. Appellant does not explain why the specific photograph is objectionable, and while we are troubled by the somewhat gratuitous and unnecessary introduction of this photo, we find no obvious error in its use by the state. Because we cannot find any abuse of discretion in the trial court's decisions concerning the photographic evidence, we overrule the fourth assignment of error.
 {¶ 77} Appellant's fifth assignment of error asserts:
 {¶ 78} "The trial court erred in admitting into evidence States [sic] Exhibit #70 as the same was not properly authenticated and by allowing Tori Griffen [sic] to testify as to the purpose of the letter."
 {¶ 79} Appellee introduced into evidence a letter purportedly written by Appellant and addressed to Ms. Griffin. (State's Exhibit 70.) The letter asks Ms. Griffin to change her testimony, seeking for her to commit perjury so that her testimony favors Appellant's acquittal. Appellant argues that the letter was not properly authenticated, although he fails to cite any particular rule that might have been violated.
 {¶ 80} Appellee correctly cites Evid.R. 901(A) as the rule governing authentication of evidence: "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Appellee cites an example from Evid.R. 901(B)(2) to show one way that handwritten words may be authenticated: "[n]onexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation."
 {¶ 81} "The party attempting to authenticate handwriting through nonexpert opinion testimony must establish that the nonexpert witness is sufficiently acquainted with the handwriting of the purported author to offer a valid opinion as to its genuineness. A nonexpert may compare a genuine sample of the person's handwriting with the handwriting in question if the nonexpert witness has first-hand knowledge of the purported author's handwriting." Dayton v. Santos (Jan. 12, 2001), 2nd Dist. No. 18324.
 {¶ 82} Appellee argues that Ms. Griffin, according to her testimony, was familiar with Appellant's handwriting based on letters he wrote to her while they dated each other. (Tr., p. 81.) She then identified the handwriting of State's Exhibit 70 as that of Appellant. (Tr., p. 82.) This testimony is sufficient to authenticate the exhibit.
 {¶ 83} Appellant also argues that Ms. Griffin gave improper opinions and speculations about the meaning of Appellant's letter. The prosecutor asked Ms. Griffin the following question:
 {¶ 84} "Q. What do you believe he [Appellant] was trying to get you to do?
 {¶ 85} "A. He was trying to get me —
 {¶ 86} "MR. GENTILE: Objection.
 {¶ 87} "A. — to change my statement, to change the whole story, to lie for him, and I felt he was trying to get me in trouble." (Tr., p. 84.)
 {¶ 88} Appellant does not specify what particular rule of evidence was violated by this testimony. The prosecutor's question appears to do nothing more than invite Ms. Griffin to tell the jury whether she read and understood the letter. The letter contained a variety of requests by Appellant to have Ms. Griffin change her testimony:
 {¶ 89} "Don't let the prosecutor try and scare you. * * * You can still tell him you don't want to testify and tell him what you said on the statement isn't true. * * * Just be straight with him and tell him your statement ain't true and you don't want to testify[.]" (Tr., pp. 82-83.)
 {¶ 90} Ms. Griffin's testimony reveals that she understood the significance of the letter. To the extent that Ms. Griffin's comments can be considered opinion testimony, we find no error in the opinions expressed. Evid.R. 701 states that:
 {¶ 91} "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."
 {¶ 92} Ms. Griffin, as a non-expert, was permitted to express her opinion about her own understanding of a letter written to her. If nothing else, her comments revealed to the jury that her entire testimony might have been biased against Appellant due to her belief that Appellant asked her to give false testimony at trial. See Evid.R. 616.
 {¶ 93} We find no error in the authentication of the letter or in Ms. Griffin's testimony about her own understanding of the letter. Appellant's fifth assignment of error is overruled.
 {¶ 94} Appellant's sixth assignment of error contends:
 {¶ 95} "The trial court erred when it failed to instruct the jury on the inferior offense of voluntary manslaughter."
 {¶ 96} Appellant argues that the trial judge should have given the jury an instruction concerning voluntary manslaughter, which carries a considerably shorter maximum prison term than murder. Appellant contends that a jury instruction should be given for a inferior degree offense if, under any reasonable view of the evidence, the trier of fact could have found him not guilty of the greater offense and guilty of the inferior degree offense. See State v. Hill (1998), 108 Ohio App.3d 279,283, 670 N.E.2d 555.
 {¶ 97} Voluntary manslaughter is an inferior degree offense of murder, meaning that the elements of the crime of voluntary manslaughter are contained within the offense of murder, except for one or more additional mitigating elements. State v. Shane (1992), 63 Ohio St.3d 630,632, 590 N.E.2d 272. The additional mitigating factors in voluntary manslaughter are that the death was committed, "while under the influence of sudden passion or in a sudden fit of rage, * * * brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the [offender] into using deadly force * * *." R.C. 2903.03(A).
 {¶ 98} In State v. Rhodes (1992), 63 Ohio St.3d 613, 617-618,590 N.E.2d 261, the Supreme Court held:
 {¶ 99} "Voluntary manslaughter is, by our prior definition, an inferior degree of murder. * * * Thus, if a defendant on trial for murder or aggravated murder (or the prosecution in such trial) produces evidence of one or both of the mitigating circumstances set forth in R.C. 2903.03, that evidence will be sufficient to entitle a defendant to an instruction on voluntary manslaughter as an inferior degree of murder if under any reasonable view of the evidence, and when all of the evidence is construed in a light most favorable to the defendant, a reasonable jury could find that the defendant had established by a preponderance of the evidence the existence of one or both of the mitigating circumstances."
 {¶ 100} Appellant argues that Ms. Griffin's testimony satisfied the requirements of Hill and Rhodes and warranted a jury instruction for voluntary manslaughter. Ms. Griffin testified that she had an ongoing relationship with Appellant. (Tr., pp. 110ff.) Ms. Griffin testified that she lied to Appellant about her relationship with the victim. (Tr., p. 139.) She testified that Appellant got mad when she told him about her relationship with the victim. (Tr. p. 92.) Appellant contends that these facts tend to show that Appellant became enraged upon finding out the details of Ms. Griffin's relationship with the victim. Appellant also contends that the way he stood over the victim and shot him multiple times is consistent with violent rage. We are not persuaded by Appellant's argument.
 {¶ 101} The burden is on the defendant to persuade the factfinder of the mitigating elements of voluntary manslaughter. State v. Rhodes
(1992), 63 Ohio St.3d 613, 590 N.E.2d 261, syllabus.
 {¶ 102} In State v. Shane (1992), 63 Ohio St.3d 630, 590 N.E.2d 272, the Ohio Supreme Court was faced with the question of whether the evidence presented at trial was sufficient to allow the judge to give an instruction on voluntary manslaughter. The Supreme Court held that, "a defendant charged with murder is entitled to an instruction on voluntary manslaughter when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter." Id. at 632. When considering such an instruction, both an objective and subjective test is used. Id. at 634-635. First, the provocation must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. Id. at 635. Second, if the objective test is met, the defendant must show that he was actually under the influence of sudden passion or in a sudden fit of rage. Id. at 634. Shane further held that, "[i]f insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction." Id. at 634.
 {¶ 103} A lapse of time, i.e., a cooling off period, between the circumstances causing the defendant to be enraged and the commission of the crime renders the "sudden passion" element of voluntary manslaughter insufficient as a matter of law. State v. Huertas (1990), 51 Ohio St.3d 22,31-32, 553 N.E.2d 1058; State v. Pierce (1980), 64 Ohio St.2d 281, 18 O.O.3d 466, 414 N.E.2d 1038. A few hours has been held to be more than enough time to "cool off" from a provoking incident in a voluntary manslaughter case. State v. Huertas (1990), 51 Ohio St.3d 22, 32,553 N.E.2d 1058. In the case at bar, the supposedly provocative encounter between Appellant and the victim took place in October but the crime was committed in January. (Tr. pp. 120-121.) This length of time is an incredibly long cooling off period, and therefore, a voluntary manslaughter instruction was not warranted.
 {¶ 104} It should also be pointed out that verbal confession of marital infidelity is generally not a legally sufficient provocation to satisfy the elements of voluntary manslaughter. Shane, supra, 63 N.E.2d at 637. If such marital infidelity cannot be sufficient provocation, the infidelity of an ex-girlfriend would be that much less acceptable to support a decision to grant a voluntary manslaughter jury instruction.
 {¶ 105} Finally, the fact that Appellant shot the victim in the head and then stood over the victim and shot him multiple times after that tends to show cool deliberation and not sudden passion. State v.Crago (1994), 93 Ohio App.3d 621, 644, 639 N.E.2d 801.
 {¶ 106} Appellant fails to point to any other provocation at or near the time of the murder which might give rise to a voluntary manslaughter instruction. There is no evidence of fighting or angry words at the time of the murder. There is nothing that could give rise to the sudden passion required for voluntary manslaughter. The trial court was correct in not giving a voluntary manslaughter instruction, and the sixth assignment of error is overruled.
 {¶ 107} Appellant's seventh assignment of error states:
 {¶ 108} "The trial court erred when it failed to instruct the jury on self-defense at the request of defendant/appellant."
 {¶ 109} Appellant argues that the jury should have been given an instruction on self-defense.
 {¶ 110} A trial court, "must give all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the factfinder." State v. Joy (1995), 74 Ohio St.3d 178,181, 657 N.E.2d 503.
 {¶ 111} "The proper standard for determining in a criminal case whether a defendant has successfully raised an affirmative defense * * * is to inquire whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue." State v. Melchior (1978),56 Ohio St.2d 15, 10 O.O.3d 8, 381 N.E.2d 195, paragraph one of the syllabus.
 {¶ 112} "To establish self-defense, a defendant must prove * * * (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger." State v. Barnes (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240.
 {¶ 113} The evidence shows that Appellant was at fault in creating the situation that led to the murder. He followed Ms. Griffin and the victim, giving rise to the crime. This fact alone is sufficient to justify the lack of a self-defense instruction.
 {¶ 114} Appellant believes that there is evidence proving that he was in imminent danger because the victim carried a gun. (Tr., pp. 264-267, 284.) There was evidence that the victim did have a gun in his vehicle with one spent shell casing in it. (Tr., p. 202.) Despite these facts, though, no reasonable jury could have found that Appellant acted in self-defense. There is no evidence that the victim's gun was ever removed from the victim's car prior to the time of the murder. Furthermore, firing multiple shots into a victim after the victim is clearly incapacitated is inconsistent with a claim of self-defense and justifies a decision to withhold a self-defense instruction. State v.Palmer (1997), 80 Ohio St.3d 543, 564, 687 N.E.2d 685.
 {¶ 115} Moreover, there is no evidence that any type of confrontation occurred between Appellant and the victim on the evening of the murder. There is also no evidence that Appellant showed any fear prior to committing the murder. Fear of imminent bodily harm or death is usually an element of self-defense. State v. Harris (1998),129 Ohio App.3d 527, 535, 718 N.E.2d 488.
 {¶ 116} Appellant further supports his argument by referring to evidence that the victim had gunshot residue on his left hand. Appellant links this with the spent shell casing to imply that the victim fired his own gun immediately prior to being shot by Appellant. On the other hand, evidence was presented that gunshot residue tests can show positive results from merely being in the same area where a gun is fired. (Tr., pp. 296-297.) The residue could have come from Appellant's gun. Given the lack of any other evidence supporting Appellant's contention that the victim was armed with a gun, there is no reasonable chance that a jury would conclude that Appellant acted in self-defense, and the trial court was correct by not giving the jury an instruction dealing with self-defense.
 {¶ 117} Appellant's eighth assignment of error alleges:
 {¶ 118} "The trial court committed plain error by failing to instruct the jury that the state must prove the firearm specification beyond a reasonable doubt."
 {¶ 119} Appellant argues that the trial court failed to instruct the jury that the firearm specification also required proof beyond a reasonable doubt in order to sustain a conviction. This allegation is simply incorrect, as the trial court clearly instructed the jury that, "if your verdict is guilty [on the murder charge] you will separately decide beyond a reasonable doubt if the defendant while committing murder used a firearm to facilitate the commission of the offense." (Tr., p. 398.) It is obvious from the record that the alleged error did not occur, and we overrule this assignment of error.
 {¶ 120} Appellant's ninth assignment of error states:
 {¶ 121} "Defendant Appellant was denied a fair trial due to the cumulative effect of the nine assignments of error as set forth herein."
 {¶ 122} Appellant alleges that he is entitled to a new trial or to dismissal of the charges based on cumulative errors. We have not discovered any errors. The doctrine of cumulative error is not applicable if multiple examples of error are not present throughout trial. State v.Garner (1995), 74 Ohio St.3d 49, 64, 656 N.E.2d 623. Therefore, we find no merit in this assignment of error.
 {¶ 123} Based on the foregoing analysis, all nine of Appellant's assignments of error are overruled and the judgment of the trial court is affirmed in full.
Judgment affirmed.
Donofrio and DeGenaro, JJ., concur.